STEPHEN R. MICK (SBN 131569)
smick@btlaw.com
DAVID W. NELSON (SBN 240040)
dnelson@btlaw.com
**BARNES & THORNBURG LLP**
2029 Century Park East, Suite 300
Los Angeles, California 90067
Telephone:    310.284.3880
Facsimile:    310.284.3894

Attorneys for Plaintiff
LMNO CABLE GROUP, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LMNO CABLE GROUP, INC., a California corporation,<br><br>                    Plaintiff,<br><br>        v.<br><br>DISCOVERY COMMUNICATIONS, LLC, a Delaware limited liability company,<br><br>                    Defendant. | Case No.  2:16-cv-4543<br><br>**COMPLAINT FOR**<br><br>**(1) COPYRIGHT INFRINGEMENT;**<br><br>**(2) UNFAIR COMPETITION [Lanham Act §43(A)];**<br><br>**(3) COMMON LAW TRADEMARK INFRINGEMENT;**<br><br>**(4) BREACH OF WRITTEN CONTRACT;**<br><br>**(5) BREACH OF CONTRACT [Implied Covenant Of Good Faith And Fair Dealing];**<br><br>**(6) BREACH OF IMPLIED-IN-FACT CONTRACT;**<br><br>**(7) UNFAIR COMPETITION [B.&P.C. §17200]**<br><br>**(8) BREACH OF CONTRACT; AND**<br><br>**(9) BREACH OF WRITTEN CONTRACT.** |

One of the foremost names in cable television production, Plaintiff LMNO Cable Group, Inc. ("LMNO") has a twenty-five year history of producing high-quality shows. Some of LMNO's early high-profile programs include: the CBS classic, *Kids Say the Darndest Things*, FOX's *Guinness World Records: Primetime*, and ABC's *Behind Closed Doors*.  For more than a decade, LMNO has also produced successful shows broadcast by Defendant Discovery Communications, LLC ("Discovery"), including *The Little Couple* – which is now in its eighth season.

In late 2015, LMNO learned that it was the victim of a crime.  LMNO discovered that its accountant, who it entrusted with all of the books and records of the company, had engaged in a long-running fraud and embezzlement scheme that included falsifying the records of the company to hide hundreds of thousands of dollars in transfers to himself.  When this conduct came to light, the accountant stole the records of LMNO in order to prevent LMNO from obtaining evidence against him, and attempted to extort money from LMNO.  In particular, the accountant demanded that LMNO pay him more than $800,000, or he would irreparably damage LMNO's reputation and business by taking his doctored books to LMNO's largest customer and use his own fraudulent creations to destroy LMNO's business relationship.

LMNO chose to stand up for itself, and refused to pay this illegal ransom. Instead, it reported the accountant to the authorities.   In its darkest hour, however, what LMNO did not count on was treachery.  Instead of standing by the side of its long-time business partner, Discovery saw an opportunity to enrich itself at LMNO's expense. Working with, and using documents prepared by a criminal extortionist, Discovery chose this moment to manufacture bad faith claims surrounding the very books and records that it had received from a criminal in a scheme to steal "*The Little Couple*" television show from LMNO, and put LMNO out of business.

By this Complaint, LMNO seeks redress for Discovery's brazen and unlawful acts, which violate LMNO's copyrights, LMNO's contractual rights and both the federal and state law of unfair competition.

**Jurisdiction and Venue**

1.     This Court has jurisdiction over the subject matter of this action pursuant to 17 U.S.C. 501, 15 U.S.C. 1121, 28 U.S.C. 1331, 1338 and 1367(a). Venue is proper in this District under 28 U.S.C. 1391(b) and 1400(a).

2.     This Court has personal jurisdiction over Discovery because it conducts substantial business in this district, including its contracts and other dealings with LMNO at issue herein.

**The Parties**

3.     LMNO is a California corporation with its principal place of business in Los Angeles, California. LMNO is a full-service television production company, which has produced Emmy Award-winning, hit programs for network, cable, and syndicated television.

4.     Discovery is a Delaware limited liability company with its principal place of business in Silver Spring, Maryland. Discovery distributes television programing through it cable television stations, including TLC.

**LMNO's History with Discovery**

5.     Since approximately 1999, LMNO has been producing television programs for distribution on Discovery's cable networks.

6.     Through this relationship, LMNO has produced more than two dozen series and innumerable specials that have been broadcast on Discovery's networks, including *Unusual Suspects* (ID), *Amazing Medical Stories* (TLC), and *The Little Couple* (TLC).

7.     Having recently completed its eighth season, LMNO's critically-acclaimed and award-winning series *The Little Couple* has been the top-rated program on Discovery's TLC network.

8.     Following the success of *The Little Couple*, the LMNO-produced program *7 Little Johnstons* premiered on TLC in March 2015. After a successful first season, LMNO has been in the process of shooting the anticipated Season 2 of this series.

9.     Capitalizing on the success of LMNO's true-crime series *Unusual Suspects*, which has now completed eight seasons on ID, LMNO's *Killer Confessions* premiered in 2015. LMNO has also recently completed shooting the first season of the anticipated series *Speaking for the Dead*.

## LMNO's Accountant

10.     For many years, LMNO's accounting (including its internal books and records) was performed by a small accountancy firm and its founding partner.  In early 2012, the founding partner died, and the firm was taken over by his son.

11.     The son held himself out to be a licensed CPA, fully capable of performing the services that the father had performed for many years.  LMNO accepted the son's representations, and allowed him full access and control over LMNO's books and records.  For years, this purported accountant was in charge of every aspect of the company's books, including its check and cost records, and its tax returns.

12.     In late 2015, LMNO discovered that its accountant had committed numerous acts of malfeasance.  He had embezzled money from the company by paying himself unauthorized checks, and then covered up this theft by altering the company's books to hide the existence and/or details of the payment.   He failed to properly keep the company's books in a number of respects, either as part of his scheme to hide his embezzlement or through general malpractice.  He failed to file tax returns.  LMNO discovered that, despite written representations, he was never actually a licensed CPA.

13.     When the malfeasance came to light, the accountant sought to hide the evidence of his unlawful conduct by confiscating all of LMNO's books and records, and refusing to return them.   The accountant (hereinafter "the Criminal Extortionist") attempted to extort money from LMNO by demanding that LMNO pay him more than

$800,000, or he would ruin LMNO's business relationships by taking his own doctored books to LMNO's customers and suggesting that LMNO had acted improperly in its accounting – when, in fact, the Criminal Extortionist had created the books and records in the first place, and the veracity of their contents could not be verified in light of his misconduct.

14.     LMNO refused to bow to this criminal scheme.  It did not pay the demanded ransom.   Instead, LMNO retained legal counsel and ultimately reported the Criminal Extortionist to the federal authorities.

15.     In a last ditch effort to hide the evidence of his misconduct, the Criminal Extortionist tried to dispose of LMNO's accounting records by throwing them in dumpsters and hiring someone to purposefully mix the papers so that the records could not be recreated.   LMNO discovered the remains of its books and records in this condition:



### Discovery's Work With The Criminal Extortionist

16.     On information and belief, the Criminal Extortionist contacted Discovery and offered to provide Discovery with stolen records that he had taken from LMNO, including records that he had intentionally doctored to hide his own embezzlement and malfeasance.   Rather than report the Criminal Extortionist's unlawful conduct to

LMNO, on information and belief, Discovery accepted the stolen information from the Criminal Extortionist, and sought to use it for its own benefit.

17.     On information and belief, Discovery communicated with and acted in concert with the Criminal Extortionist to manufacture false claims against LMNO relating to the very accounting records that the Criminal Extortionist had doctored and then stolen.

18.     On information and belief, as part of this scheme, Discovery sought to use the stolen records, and other information gleaned from its dealings with the Criminal Extortionist, for the purpose of creating leverage against LMNO in a bad faith attempt to steal LMNO's shows, including *The Little Couple*.

19.     On information and belief, as part of this scheme, Discovery asserted that LMNO had failed to maintain books and records for the various shows that LMNO was producing for Discovery, despite the fact that Discovery knew full well that the books and records had been stolen by the Criminal Extortionist who was working with Discovery.

20.     On information and belief, Discovery sought to use this scheme to steal the crown jewel of LMNO's current productions – *The Little Couple*.

21.     On information and belief, Discovery had recognized for some time that *The Little Couple* was a highly valuable television show, and that Discovery could realize substantially greater economic value if it owned and produced the show itself – in other words, if it could somehow take the show away from LMNO.

22.     On information and belief, Discovery seized the opportunity presented to it by the Criminal Extortionist and sought to force LMNO to hand over the rights to the show that LMNO had created and carefully nurtured for years.

## Discovery's Scheme to Steal *The Little Couple*

23.     LMNO created the original concept for *The Little Couple* in the fall of 2008.  Originally entitled "The Little Big Year," LMNO envisioned a show featuring

the professional and family tribulations of a newly married couple who both have a form of skeletal dysplasia, more commonly known as dwarfism.  In late 2008, LMNO produced a television pilot of this program entitled "*The Little Couple: Just Married*."

24.   Because Discovery was distributing several LMNO-produced shows, LMNO offered the series to Discovery, which agreed to distribute the show.   In November 2008, LMNO and Discovery entered into an original contract pursuant to which Discovery was granted certain distribution rights to exhibit the show on its cable television channel.

25.   Over the course of many years, Discovery has ordered additional seasons of *The Little Couple*, each of which is documented by additional contracts that relate to each specific set of episodes for an individual season.

26.   In negotiating agreements for a season of television shows, Discovery would generally tell LMNO how much it was willing to pay to obtain the right to distribute that particular season of shows.   In the early years, Discovery would sometimes offer to pay a percentage of the negotiated and agreed upon "budget amount" for a show, which represented the parties' mutual understanding of the value of the episodes.   In later years, Discovery would be even more direct and simply offer to pay a flat fee to LMNO for each episode that LMNO would produce and then deliver to Discovery for exhibition on Discovery's channels.

27.   So, for example, when Discovery negotiated with LMNO for Season 7 of *The Little Couple*, the agreement (which was always drafted by Discovery's legal department) states that "The parties acknowledge and agree that for the Season 7 Additional Episodes, [Discovery's] Budget Contribution shall be a **Flat Fee of USD $127,035 per half-hour Episode**."   Discovery and LMNO agreed and understood that the "Flat Fee" payment was a negotiated price per-episode that Discovery offered and agreed to pay irrespective of the actual cost of the episode.

28.   In some of the most recent shows and seasons, Discovery's "flat fee" language was even more explicit.   So, for example, in the production and distribution

contract for *Speaking For The Dead*, the payment clause calls for Discovery to pay to "**a 'Flat Fee' equal to … \$380,000 per episode.   Accordingly: Producer is responsible for all overages … and retains all underages (i.e., savings).**"

29.     Thus, it was agreed, understood and explicit in both the contract documents and the course of dealing between Discovery and LMNO that Discovery was paying a set price – a "**flat fee**" – for the right to receive and distribute each of the contracted episodes, and that LMNO bore the risk of cost overruns, but also the benefit of cost savings that might accrue because of LMNO's work as the producer of the shows.

30.     When Discovery concocted its scheme to steal *The Little Couple* show from LMNO, it took advantage of the fact that it knew (from its communication with the Criminal Extortionist) that the Criminal Extortionist had stolen all of LMNO's original books and records, and dumped them so LMNO could not readily access the records.   Moreover, because the Criminal Extortionist had doctored the books in order to hide his own malfeasance, LMNO could not be certain which portions of the scattered pages of its records were even reliable.

31.     On information and belief, Discovery seized on this information – which it only had because it was acting in concert with a criminal, and because it had received stolen property from that criminal – and demanded that LMNO turn over all of its historical accounting records as part of a surprise audit demand that it sprung on LMNO without any of the notice required in the parties' contracts.   Of course, Discovery was aware that LMNO could not provide immediate access to the books and records because the Criminal Extortionist had stolen the records and left them in disarray.

32.     Next, Discovery asserted that LMNO had improperly charged Discovery for many of the shows that LMNO had produced, when in fact, Discovery's own contracts (drafted by its own in-house lawyers) specified that Discovery was paying a "flat fee" per episode, which would not be adjusted up or down based on costs.

33.     Discovery's actions were all designed to drum up the pretense of a contract dispute, so that Discovery could claim to "terminate" the contracts and distance itself

from LMNO.   On June 17, 2016, Discovery did exactly that: sending notices of termination on six different series, including *The Little Couple, 7 Little Johnstons, Killer Confessions, Speaking For The Dead, Unusual Suspects and Hollywood & Crime*. Tellingly, Discovery purported to terminate shows on which it had never even seen the books, shows that were newly in production for which current reports had not yet been made, shows that were finished and delivered four years ago, and shows on which it had refused to sign a written contract.

34.    In reality, all of this was a smokescreen for what Discovery was really after: the ability to steal *The Little Couple* and produce the show behind LMNO's back.

35.    Without telling LMNO, on information and belief, Discovery secretly began shooting new episodes of *The Little Couple* on its own more than a month ago as part of its scheme to take the show.

36.    On information and belief, Discovery has secretly told the actors on the show not to communicate with LMNO about Discovery's plans.

37.    On information and belief, Discovery has begun leaking to the press and people in the television industry the information that it obtained from the Criminal Extortionist in an effort to damage LMNO's reputation, and prevent LMNO from standing up for its ownership of the show.

38.    Discovery's actions, as alleged herein, were wrongful, and in violation of LMNO's ownership rights under Copyright law, as well as LMNO's rights under contract and unfair competition law.

39.    Discovery's actions have irreparably damaged the business and reputation of an award-winning family-owned business in Los Angeles.   As result of Discovery's actions, LMNO has been forced to lay off certain staff, and cut short the production of two shows at a cost of hundreds of thousands of dollars.    By this Complaint, LMNO seeks redress for Discovery's wrongful conduct as alleged herein.

# FIRST CLAIM FOR RELIEF

## Copyright Infringement

### [17 U.S.C. § 501 et seq.]

40.     LMNO repeats and realleges each of the allegations set forth in paragraphs 1 through 39, above, as though set forth in full herein.

41.     LMNO is the creator, registered owner and author of the copyrighted works in consisting of the many seasons of *The Little Couple* (the "Copyrighted Programs"), and therefore is entitled to the exclusive rights under copyright law associated with each of these works, including all rights set forth in 17 U.S.C. § 106 with respect thereto.

42.     LMNO has registered copyrights with the United States Copyright Office for the episodes of the Copyrighted Programs. LMNO's registered copyrights include, *inter alia*, Registration Numbers PA0001848149, PA0001918249, PA0001918243, PA0001908739, and PA0001908886.

43.     Discovery has unlawfully infringed on LMNO's copyrights in the Copyrighted Programs and the related creative material authored by LMNO in connection with the creation of Copyrighted Programs in at least the following ways:

44.     Discovery has unlawfully, and without permission or authority, copied portions of the Copyrighted Programs, and used those portions to create unauthorized derivative works consisting of reassembled footage taken verbatim from different portions of the Copyrighted Programs, rearranged and repackaged by Discovery as a three-hour show entitled *The Little Couple: The Adoption Years* ("the Infringing Episode").

45.     Without authorization, Discovery distributed and broadcast, or caused to be broadcast, the Infringing Episode in violation of LMNO's rights under copyright law.

46.     Discovery further wrongfully claimed ownership in the Infringing Episode, despite having full knowledge that all of the original footage was part of the Copyrighted Programs owned by LMNO.

47.     In early 2016, LMNO created a story outline and treatment for a proposed special episode of *The Little Couple* that included a trip to Scotland and England. LMNO's outline and treatment described all of the major features of the proposed episode, including the locations, story-lines and likely edits.   Like all of the episodes of *The Little Couple*, the proposed special episode incorporates elements, themes, characters, prior story lines, and the format and structure that have been created by LMNO in connection with the Copyrighted Programs.   In short, the proposed special would be a derivative work of both (a) the prior Copyright Programs and (b) the story outline and treatment devoted to the proposed special itself. LMNO has filed an application to register the copyright for the story outline and treatment for the proposed special episode with the United States Copyright Office, Application Case No. 1-3715342338.

48.     LMNO disclosed the story outline and treatment to Discovery, and proposed that LMNO produce the special episode as a "one-off" television special.

49.     Discovery agreed to LMNO's proposal, and informed LMNO that it would pay LMNO for the right to distribute the proposed special.

50.     Once Discovery launched its scheme to steal *The Little Couple*, however, Discovery changed course and informed LMNO that it would only pay for the right to distribute the proposed special if LMNO agreed to sign over all ownership rights in the proposed special to Discovery.   LMNO (which had created the show and the proposed special, and owned all of the episodes over the course of eight seasons) naturally refused to give up the ownership rights in the special.   Discovery then cancelled its order for the special, and instructed LMNO to take no further actions with respect to the production of the proposed special.

51.     Without informing LMNO, however, Discovery secretly arranged to shoot the proposed special episode of *The Little Couple* without LMNO's knowledge, consent or participation.

52.     On information and belief, Discovery has shot the footage for the special Scotland and England episode of *The Little Couple*, and edited that footage into a special program ("the Infringing Special") that it intends to air as part of the culmination of its scheme to steal *The Little Couple* from LMNO.

53.     The Infringing Special constitutes an unauthorized derivative work of the Copyrighted Programs and the story outline and treatment authored by LMNO, and thus infringes LMNO's rights under copyright law.

54.     On information and belief, Discovery has gone even further and has secretly commenced filming new episodes of *The Little Couple* for a ninth season with the purpose and intent of stealing the show from LMNO.

55.     On information and belief, Discovery's new episodes of *The Little Couple* ("the Infringing Season") include the same or substantially similar elements, format, structure, characters, themes, mood, pace, plot, and settings as LMNO's Copyrighted Programs.  Discovery's Infringing Season, therefore, is substantially similar to LMNO's Copyright Programs, and constitutes infringement of LMNO's rights under copyright law.

56.     On information and belief, Discovery's Infringing Season incorporates at least the following elements which are substantially similar to, if not virtually identical to, LMNO's Copyrighted Programs:

     a.  each episode of the Infringing Season features the same characters and actors as LMNO's Copyrighted Programs;

     b.  each episode of the Infringing Season features the same themes, settings, locations, format, and general atmosphere and tone as LMNO's Copyrighted Programs; and

     c.  each episode of the Infringing Season continues the overall plotlines and storylines as LMNO's Copyrighted Programs, including family vacations, medical issues, job issues and other story and plot elements that were introduced during LMNO's Copyrighted Programs.

57.     Discovery's conduct as alleged above, including its production and distribution of the Infringing Episode, the Infringing Special and the Infringing Season, constitutes copyright infringement pursuant to 17 U.S.C. § 501, *et seq*.

58.     Discovery's infringement was willful, and with knowledge of LMNO's rights in the Copyright Programs.

59.     LNMO has been damaged by, and Discovery has profited from, such infringement in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### Unfair Competition

### [Lanham Act § 43(a); 15 U.S.C. § 1125(a)]

60.     LMNO repeats and realleges each of the allegations set forth in paragraphs 1 through 59, above, as though set forth in full herein.

61.     LMNO is the creator, producer and source of the long-running series of entertainment content known to the public by the mark "THE LITTLE COUPLE."  Through years of association between the mark "THE LITTLE COUPLE" and LMNO's entertainment content, consumers have come to immediately recognize and associate the mark "THE LITTLE COUPLE" with entertainment programing created and produced by LMNO.

62.     Discovery has historically served only as a distributor of the entertainment content associated with the mark "THE LITTLE COUPLE" – a mere conduit between the actual creator, producer and source, which is LMNO, and the retail delivery of the content through consumer-level cable providers, such as Time Warner Cable.  Because trademarks and service marks serve as a source-identifier, the common law trademark rights in "THE LITTLE COUPLE" legally belong to the source of the entertainment content, which is LMNO, the producer of the show.

63.     As part of its scheme to steal *The Little Couple* show from LMNO, on information and belief, Discovery has decided to use the mark "THE LITTLE COUPLE" in

connection with its production, marketing and distribution of the Infringing Special and the Infringing Season.

64.     Thus, in connection with the sale of goods and services, on information and belief, Discovery has used in commerce and in competition with LMNO the mark "THE LITTLE COUPLE" and substantially similar marks to designate and market the Infringing Special and the Infringing Season, which uses are likely to cause confusion, and/or cause mistake, and/or deceive consumers concerning the affiliation, sponsorship, connection and/or association between LMNO and Discovery, and/or LMNO's sponsorship, affiliation and/or approval of Discovery's Infringing Special and Infringing Season. Consumers are likely to believe that Discovery's Infringing Special and Infringing Season come from the same source, and are affiliated, connected, or associated with LMNO, which was the source of every episode of Seasons 1-8 of *The Little Couple*.

65.     Discovery's actions have caused, and unless enjoined will continue to cause, substantial and irreparable injury to LMNO for which LMNO has no adequate remedy at law, including but not limited to substantial and irreparable injury to the goodwill and reputation associated with the "THE LITTLE COUPLE" mark.

66.     Discovery's actions have been willful, intentional, and malicious, and have been done with knowledge and intent to confuse the public, for the purpose of injuring LMNO and reaping the benefits of LMNO's goodwill and reputation associated with "THE LITTLE COUPLE" mark.

67.     As a result of Discovery's actions, LMNO has been damaged by, *inter alia*, the loss of its ability to sell and market further episodes of the *The Little Couple* under the "THE LITTLE COUPLE" mark and the loss of goodwill and reputation associated with the "THE LITTLE COUPLE" mark.

68.     LMNO is entitled to injunctive relief, recovery of Defendant's profits, actual damages, treble profits and damages, costs, and reasonable attorneys' fees.

Moreover, this is an exceptional case authorizing attorneys' fees under 15 U.S.C. §1117(a).

**THIRD CLAIM FOR RELIEF**

**Common Law Trademark Infringement**

69.     LMNO repeats and realleges each of the allegations set forth in paragraphs 1 through 68, above, as though set forth in full herein.

70.     LMNO is the creator, producer and source of the long-running series of entertainment content known to the public by the mark "THE LITTLE COUPLE."  Through years of association between the mark "THE LITTLE COUPLE" and LMNO's entertainment content, consumers have come to immediately recognize and associate the mark "THE LITTLE COUPLE" with entertainment programing created and produced by LMNO.

71.     Discovery has historically served only as a distributor of the entertainment content associated with the mark "THE LITTLE COUPLE" – a mere conduit between the actual creator, producer and source, which is LMNO, and the retail delivery of the content through consumer-level cable providers, such as Time Warner Cable.  Because trademarks and service marks serve as a source-identifier, the common law trademark rights in "THE LITTLE COUPLE" legally belong to the source of the entertainment content, which is LMNO, the producer of the show.

72.     As part of its scheme to steal *The Little Couple* show from LMNO, on information and belief, Discovery has decided to use the mark "THE LITTLE COUPLE" in connection with its production, marketing and distribution of the Infringing Special and the Infringing Season.

73.     Thus, in connection with the sale of goods and services, on information and belief, Discovery has used in commerce and in competition with LMNO the mark "THE LITTLE COUPLE" and substantially similar marks to designate and market the Infringing Special and the Infringing Season, which uses are likely to cause confusion, and/or

cause mistake, and/or deceive consumers concerning the affiliation, sponsorship, connection and/or association between LMNO and Discovery, and/or LMNO's sponsorship, affiliation and/or approval of Discovery's Infringing Special and Infringing Season. Consumers are likely to believe that Discovery's Infringing Special and Infringing Season come from the same source, and are affiliated, connected, or associated with LMNO, which was the source of every episode of Seasons 1-8 of *The Little Couple*.

74.     Discovery's actions have caused, and unless enjoined will continue to cause, substantial and irreparable injury to LMNO for which LMNO has no adequate remedy at law, including but not limited to substantial and irreparable injury to the goodwill and reputation associated with the "THE LITTLE COUPLE" mark.

75.     Discovery's actions have been willful, intentional, and malicious, and have been done with knowledge and intent to confuse the public, for the purpose of injuring LMNO and reaping the benefits of LMNO's goodwill and reputation associated with "THE LITTLE COUPLE" mark.

76.     As a result of Discovery's actions, LMNO has been damaged by, *inter alia*, the loss of its ability to sell and market further episodes of the *The Little Couple* under the "THE LITTLE COUPLE" mark and the loss of goodwill and reputation associated with the "THE LITTLE COUPLE" mark.

## FOURTH CLAIM FOR RELIEF
### Breach of Written Contract
### [October 24, 2014 Formal Assignment Contract]

77.     LMNO repeats and realleges each of the allegations set forth in paragraphs 1 through 76, above, as though set forth in full herein.

78.     In 2014, Discovery requested that LMNO allow Discovery to directly employ the actors for *The Little Couple*.   LMNO consented to this request, but insisted that the assignment of the actors' agreement include a specific non-circumvention clause

that prevents Discovery from trying to create a related show or derivative work without using LMNO as the producer.

79.    In October 2014, LMNO and Defendant entered into a "Formal Assignment" pursuant to which LMNO assigned most of its rights and obligations in the agreement with the actors who appear in *The Little Couple*. Pursuant to the Formal Assignment, LMNO expressly maintained all ownership rights in *The Little Couple* pursuant to the contracts between LMNO and Discovery, including LMNO's copyrights in the show, and further obtained an agreement by Discovery that it would not attempt to use its direct relationship with the actors to produce programs without LMNO.

80.    Specifically, the Formal Assignment provides, in relevant part:

"[Discovery] agrees that [LMNO] shall be locked on a pay or play basis to: (i) new programs that are derivative works of the Program; (ii) talk shows featuring Jen, Bill or their kids; (iii) children's shows featuring Jen, Bill, or their kids; and (iv) any other reality specials or programs related to or similar to the Program."

81.    The Formal Assignment is a valid, binding, and enforceable written contract between LMNO and Discovery.  The "lock" clause of the Formal Assignment, quoted above, requires Discovery to engage LMNO as the Producer on any television program that is a derivative work of the Copyrighted Programs, or is otherwise related to or similar to the Copyrighted Programs.

82.    LMNO has performed all its obligations under the Formal Assignment.

83.    As part of its scheme to steal *The Little Couple* show, Discovery has breached the "lock" provision of the Formal Assignment contract by:

    a.  Producing the Infringing Special, which is a derivative work of the Copyrighted Programs, and a show that is related to and similar to the Copyrighted Programs, without engaging LMNO as the producer as it was required to do under the "lock" provision; and

b.   Producing the Infringing Season, which is a derivative work of the Copyrighted Programs, and a series of shows that are related to and similar to the Copyrighted Programs, without engaging LMNO as the producer as it was required to do under the "lock" provision.

84.   As a result of Discovery's breach, LMNO has been damaged in that it has been deprived of the value it would have received as the producer of the shows, including its profits relating to such shows, its profits from further renewals and continuations of such shows, and the revenues and other value attributable to ownership of the episodes, in an amount to be proven at trial but presently believed to be in excess of $5,000,000.

## FIFTH CLAIM FOR RELIEF

### Breach of Contract

### [Production & Distribution Agreement for *The Little Couple*]

85.   LMNO repeats and realleges each of the allegations set forth in paragraphs 1 through 84, above, as though set forth in full herein.

86.   LMNO and Discovery are parties to a valid, binding, and enforceable contract that governs LMNO's license of certain distribution rights to Discovery with respect to *The Little Couple*.   The production and distribution contract includes multiple documents, and includes a November 5, 2008 agreement that pertains to LMNO's grant of a license to Discovery with respect to the first season of *The Little Couple*.  The November 5, 2008 agreement is supplemented by a series of amendments, which pertain to the production and distribution of subsequent seasons of *The Little Couple* through the end of Season 8.

87.   The November 5, 2008 agreement contains a series of provisions that give Discovery an option and a right of first negotiation to order additional seasons of *The Little Couple* from LMNO after Season 1.   In the event that Discovery does not exercise its option, and the initial negotiations do not materialize into an agreement

between the parties for additional episodes, then the November 5, 2008 agreement explicitly provides that LMNO shall be free to enter into negotiations with third parties with respect to the production and distribution of additional episodes of *The Little Couple*.

88.     Discovery did not exercise its option to order additional seasons of *The Little Couple* from LMNO after Season 8.   On June 17, 2016, Discovery terminated the November 5, 2008 agreement with LMNO with respect to *The Little Couple*, and has instead gone forward with its scheme to steal *The Little Couple* by producing additional episodes without LMNO's participation, authorization or consent.

89.     Discovery's course of conduct, including its production of the Infringing Season, is a breach of the production and distribution agreement embodied in the November 5, 2008 contract, including the covenant of good faith and fair dealing that is implied in that contract.   In particular, Discovery's course of conduct, including its production of the Infringing Season, has destroyed LMNO's ability to obtain the benefit of its underlying rights in the show, including its right under Section 7.G of the November 5, 2008 contract to negotiate with other parties for the production and distribution of additional episodes of *The Little Couple*, because no other potential distributor of *The Little Couple* will engage in such negotiations with LMNO while Discovery is unlawfully producing the Infringing Season.

90.     As a result of Discovery's breach, LMNO has been damaged in that it has been deprived of the value it would have received as the producer of future episodes of *The Little Couple*, including its profits relating to such shows, its profits from further renewals and continuations of such shows, and the revenues and other value attributable to ownership of the episodes, in an amount to be proven at trial but presently believed to be in excess of $5,000,000.

# SIXTH CLAIM FOR RELIEF

## Breach of Implied Contract

### [Production & Distribution of the Scotland/UK Special]

91.  LMNO repeats and realleges each of the allegations set forth in paragraphs 1 through 90, above, as though set forth in full herein.

92.  After the conclusion of Season 8 of *The Little Couple*, LMNO proposed to Discovery that LMNO would shoot a special episode that centered on a family vacation trip to Scotland and England.  LMNO prepared a story outline and treatment for the proposed special, and pitched the idea to Discovery in early 2016.  Because LMNO owned all of the underlying rights in The Little Couple, and because LMNO was the originator, author and creator of the story outline and treatment, LMNO and Discovery understood that Discovery could not and would not utilize the idea of the Scotland and England special episode without LMNO's consent, and without compensating LMNO.

93.  Discovery initially responded with enthusiasm to the proposal, and approved LMNO's production of the special.   However, on information and belief, after communicating with the Criminal Extortionist and concocting its scheme to steal the show from LMNO, Discovery cancelled its order for the special, and informed LMNO that it would not move forward with the show.

94.  However, without informing LMNO, and without LMNO's consent or authorization, Discovery secretly went ahead and filmed the Infringing Special, which is substantially based on the proposal made by LMNO, and previously approved by Discovery.

95.  The circumstances and actions of LMNO and Discovery with respect to LMNO's proposal for the Scotland and England special gave rise to an implied-in-fact contract within the meaning of *Desny v. Wilder*, 46 Cal.2d 715 (1956), and Discovery breached that contract by using LMNO's proposal and creating the Infringing Special without compensating LMNO.

96.     As a result of Discovery's breach of the implied-in-fact contract, LMNO has been damaged in that it has been deprived of the value it would have received as the producer of the Scotland and England special, including its profits relating to such show, and the revenues and other value attributable to ownership of the special, in an amount to be proven at trial, but in no event less than $250,000.

## SEVENTH CLAIM FOR RELIEF
### For California Unfair Competition
### [Cal. Bus. & Prof. Code § 17200]

97.     LMNO repeats and realleges each of the allegations set forth in paragraphs 1 through 96, above, as though set forth in full herein.

98.     Discovery has engaged in fraudulent and unfair business practices through the use of reproductions, counterfeits, copies, and/or colorable imitations of "THE LITTLE COUPLE" related marks, infringement of LMNO's copyrighted works, and public representations implying its right to produce and exhibit future episodes of *The Little Couple*, which are likely to cause, and have caused, consumer confusion regarding Discovery's association with LMNO and the source of future *The Little Couple* programs now in production.

99.     Discovery has engaged in illegal business practices through its violations of the Copyright Act and the Lanham Act.

100.   Discovery's unfair and unlawful business practices described above have caused, and unless enjoined will continue to cause, substantial and irreparable injury to LMNO for which LMNO has no adequate remedy at law, including but not limited to substantial and irreparable injury to the goodwill and reputation associated with "THE LITTLE COUPLE" mark. LMNO has further suffered a loss of money and property as a result of Discovery's unfair competition, including from lost sales, diversion of revenue, loss of goodwill, and diminution of value of "THE LITTLE COUPLE" mark.

101.   LMNO is entitled to injunctive relief against Discovery, along with restitution of monies belonging to LMNO that were wrongfully diverted or otherwise obtained by Discovery.

## EIGHTH CLAIM FOR RELIEF

### Breach of Contract

### [Production and Distribution Agreement for *7 Little Johnstons*]

102.   LMNO repeats and realleges each of the allegations set forth in paragraphs 1 through 101, above, as though set forth in full herein.

103.   Discovery and LMNO negotiated the terms of a contractual agreement, pursuant to which LMNO would produce a second season of *7 Little Johnstons*, comprised of eight episodes.  In consideration for LMNO's production and grant of distribution rights for these eight episodes, Discovery agreed that it would pay LMNO a flat fee of $2,640,000.

104.   In reliance on this agreement, LMNO began filming for these episodes, and has performed all of its obligations under the parties' agreement, except to the extent excused by Discovery's breach.

105.   Based on the agreements and representations of the parties, and the parties' subsequent actions, including LMNO's substantial performance and Discovery's part performance, and LMNO's substantial reliance, there exists a valid, binding, and enforceable contract between LMNO and Discovery with respect to the production of these episodes of *7 Little Johnstons*, pursuant to which Discovery is obligated to pay LMNO the agreed flat fee sum of $2,640,000.

106.   Despite LMNO's reliance and substantial performance, Discovery has repudiated its agreement and obligations, refused to pay LMNO the sums that are due, and recently purported to terminate its agreement with LMNO with respect to *7 Little Johnstons*.  To date, Discovery has paid only $2,007,952.90 of its promised $2,640,000

fee, while much of the cost of the production has already been paid by LMNO in reliance the parties' agreement.

107.   Discovery has failed to perform its obligations and promises, and has materially breached the parties' agreement, by failing to make its promised payments, and by repudiating the parties' agreement.

108.   As a result of Discovery's breach, Discovery has been unjustly enriched and LMNO has been damaged in an amount of at least $632,000.

## NINTH CLAIM FOR RELIEF

### Breach of Written Contract

### [Production and Distribution Agreement for *Killer Confessions*]

109.   LMNO repeats and realleges each of the allegations set forth in paragraphs 1 through 108, above, as though set forth in full herein.

110.   LMNO and Discovery entered into a production and distribution contract dated August 20, 2014, and a further agreement dated December 8, 2015, pursuant to which LMNO agreed to produce additional episodes of *Killer Confessions*, and Discovery agreed to pay LMNO for distribution rights in such episodes.

111.   The contractual agreements between LMNO and Discovery with respect to the production and distribution of the second season of *Killer Confessions* are valid, binding, and enforceable written contracts between LMNO and Discovery.

112.   LMNO has performed all of its obligations under contracts relating to Season 2 of Killer Confessions, except those that have been excused by Discovery's breach.

113.   Discovery has breached the contractual agreement for the production and distribution of Season 2 of Killer Confessions by repudiating and terminating the agreement, and thus refusing to pay LMNO the contractual price for the production of and distribution of the episodes.  To date, at least $1,200,000 remains due and owing from Discovery to LMNO under with respect to *Killer Confessions*.

114.   As a result of Discovery's breach, LMNO has been damaged in an amount to be proven at trial, but in no event less than $1,200,000.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff LMNO Cable Group, Inc. demands judgment against Defendant Discovery Communications, LLC as follows:

A.     That Defendant and its agents, servants, employees, representatives, successors, and assigns, and all persons or entities in active concert or participation with Defendants, be enjoined from:

(1)  copying, distributing or publishing copies of, or derivative works based on, the Copyright Programs, or otherwise directly or indirectly infringing or contributing to the infringement of the Copyright Programs;

(2)  further use of the mark "THE LITTLE COUPLE," or any reproductions, counterfeits, copies, and/or colorable imitations of "THE LITTLE COUPLE";

(3)  otherwise unfairly competing with LMNO in any manner; and

(4)  effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (1) – (4) herein.

B.     That LMNO be awarded damages for Defendant's copyright infringement and unfair competition as set forth herein, including actual damages, statutory damages, and Defendant's profits derived from its unlawful infringement, together with prejudgment and post-judgment interest.

C.     That Defendant account for, disgorge and pay over to LMNO all profits realized by Defendant by reason of Defendant's unlawful acts herein alleged and that such award be increased as provided by law.

D.     For compensatory and consequential damages according to proof on its breach of contract claims in an amount to be proven at trial, but presently believed to be not less than $7,000,000.

E.      For costs and attorneys fees pursuant to applicable law.

F.      For such other and further relief as the Court deems proper, just and equitable.

Dated:  June 22, 2016                    BARNES & THORNBURG LLP


By_____/s/ Stephen R. Mick_____
                    Stephen R. Mick
                    Attorneys for Plaintiff
                    LMNO CABLE GROUP, INC.