# EXHIBIT A



10100 Santa Monica Boulevard
Suite 1500
Los Angeles, CA 90067

## COPRODUCTION ATTACHMENT FOR NEW PROGRAM

ATTACHMENT, between **LMNO CABLE GROUP, INC.** ("Producer"), a California corporation with offices at 15821 Encino Boulevard, Suite 320, Encino, California 91436 on the one hand, and **DISCOVERY COMMUNICATIONS, LLC (f/k/a DISCOVERY COMMUNICATIONS, INC.)** ("Company"), a limited liability company, with offices at One Discovery Place, Silver Spring, Maryland 20910, on the other hand, dated November 5, 2008 ("Attachment") to the Amended and Restated Master Agreement, dated December 10, 2002, between Producer and Company (collectively, "Agreement").

Now therefore, in consideration of the foregoing and of the mutual promises and covenants contained herein, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. The Program

| PROGRAM WORKING TITLE ("Program") | PROGRAM DESCRIPTION | # OF EPISODES | COMMERCIAL LENGTH |
|---|---|---|---|
| Little People Couple | A look at the life of Jen and Bill, little people who are experiencing their first year of marriage. | One (1) (the "Pilot Program") | One (1) sixty minute (60:00) commercial length episodes |

*The Pilot Program is based on the Production Budget attached hereto as Exhibit G and the Production Schedule attached hereto as Exhibit I. The Program Materials shall be delivered in accordance with Exhibit J attached hereto and the Technical Specifications attached hereto as Exhibit K.

2. Budget Contribution

A. In consideration for the performance by Producer of its obligations hereunder and in full discharge of all of Company's obligations to Producer in connection with the Pilot Program, Company agrees to pay Producer, and Producer agrees to accept, the amount(s) set forth hereafter: Sixty Six percent (66%) of the Production Budget, up to Two Hundred Thirty One Thousand United States Dollars (USD $231,000) (the "Budget Contribution") payable in accordance with the Payment Schedule attached hereto as Exhibit H. Notwithstanding any provisions of the Amended and Restated Master Agreement (including any Exhibits) to the contrary, it is acknowledged and agreed that any payments to Producer by Company after delivery of any Program Materials under the Agreement, including the final Program Materials, will not constitute approval by Company of the applicable Program Materials in whole or in part

November 5, 2008
Little People Couple (wt)
Discovery Channel • TLC • Animal Planet • Travel Channel • Discovery Health Channel • The Science Channel • Discovery Kids
Military Channel • Discovery Times Channel • Discovery HD Theater • FitTV • Discovery Home Channel • Discovery en Español
Discovery Kids en Español • Discovery Travel & Living, viajar y vivir • BBC America • BBC World • Discovery Civilisation Channel
Discovery Wings • Discovery Geschichte • People + Arts • Discovery Travel & Living • Discovery Home & Health • Discovery Real Time
Discovery Real Time Extra • Discovery Science Channel • Discovery Turbo • Discovery Channel Store • Discovery.com
Cosmeo • unitedstreaming • Discovery Health Connection • Assignment Discovery • Discoveryschool.com

HIGHLY CONFIDENTIAL
FOIA CONFIDENTIAL TREATMENT REQUESTED
GRAND JURY MATERIALS UNDER FED. R. CRIM. P. 6
CONFIDENTIAL

DOJ-DISCA00000476

DISC000000506

or waiver of Company's rights with respect to any applicable breach. Further, in the event Company, in its sole discretion, elects to pay Producer any portion of the Budget Contribution in advance of completion of the applicable payment milestone set forth in the Payment Schedule, such payment shall not relieve Producer of any of its obligations to complete the applicable milestone nor be deemed a waiver by Company of any other obligation of Producer hereunder.

    B.    For purposes of clarity, the Production Budget attached hereto includes an approved "Producer Fee" to be retained by Producer for the Pilot Program equal to 10% of the final, approved, going-in budget (for hard production costs only and shall in no event include any costs such as agency fees, talent fees, interest, financing charges/fees, bank fees, currency fluctuation reserves, deferments, contingencies, completion bond fees, contestant prize money, breakage, overages, non-customary legal fees, fees payable to Company's designated producers and/or accountants, settlement amounts and residuals). The Producer Fee shall cover (i.e., Producer shall use such amount to discharge) Producer's production company fee and the Executive Producer services of Eric Schotz.

3.    <u>Grant of Rights</u>

| MEDIA | TERRITORY | EXHIBITION PERIOD |
|---|---|---|
| All Media | North American Territory | Five (5) years commencing on the earlier of (a) the first exhibition of the Program in the Territory; and (b) the date February 15, 2009 |

*\*Limited language rights and/or non-exclusive rights, if applicable, are denoted parenthetically next to the applicable Territory above.*

4.    <u>Credits</u>

The parties agree that the Program and all versions thereof shall contain the following production credit for Company and Producer (Producer's credit in text form) in all media throughout the world:

***Produced by LMNO Cable Group, Inc. for TLC***

At its option and expense, Company may substitute another Company entity in the production credit or remove its credit.

November 5, 2008
*Little People Couple (wt)*
Network: TLC
Contract ID#: 1021931
Master Contract ID#: 1011286
CO/SE

HIGHLY CONFIDENTIAL
FOIA CONFIDENTIAL TREATMENT REQUESTED
GRAND JURY MATERIALS UNDER FED. R. CRIM. P. 6

CONFIDENTIAL

DOJ-DISCA00000477

DISC000000507

5.  Company Revenue Participation/Company Shall Receive

Twenty percent (20%) of Producer's Adjusted Gross Revenues from all media in perpetuity calculated in accordance with Exhibit F of this Attachment.

6.  Key Person

| NAME OF INDIVIDUAL | SERVICE TO BE PERFORMED |
|---|---|
| Eric Shotz | Executive Producer |

7.  Additional Programs

A.  Company shall have an exclusive option (the "First Season Option"), exercisable in Company's discretion, to engage Producer's services to produce and deliver to Company an initial season of episodes in a series based on the Pilot Program (the "First Season"). The number of episodes initially ordered by Company for the First Season shall constitute the "Initial Order." The parties currently contemplate the commercial length of each series episode in the First Season (if any), and any Season thereafter, to be thirty (30) minutes, however, upon mutual agreement by the parties, each series episode may increase to a commercial length of sixty (60) minutes. Company may exercise its First Season Option by giving Producer written notice of its exercise no later than 90 days after Company's first exhibition of the Pilot Program.

Should Company elect to exercise it First Season Option, and any subsequent Season Option thereafter, in consideration for the performance by Producer of its obligations hereunder and in full discharge of all of Company's obligations to Producer in connection with the production and delivery of the applicable Season of the Program, Company agrees to pay Producer, and Producer agrees to accept, **[tbd]** percent (tbd%) of the final going-in Company approved production budget (the "Series Budget Contribution").

The production budget for the First Season shall include a 10% production company fee of the Company-approved production budget (provided that the calculation of such fee does not include: production company and/or EP fees; agency package fees; non-customary legal fees; or host, talent or other participant fees) to Producer (the "Producer's Fee"). The Producer's Fee shall be subject to 5% cumulative annual increases (provided the applicable option(s) for the production of the Program are exercised).

If the First Season Option is exercised by Company and Company orders the First Season of episodes, all of the terms and conditions of this Attachment shall be applicable equally to each and all of the episodes of the Initial Order and shall govern the respective rights, duties and obligations of the parties with respect to each other and all of the episodes, except as set forth in Paragraph 7(D)(i) and (ii) below.

November 5, 2008
*Little People Couple (wt)*
Network: TLC
Contract ID#: 1021931
Master Contract ID#: 1011286
CO/SE

HIGHLY CONFIDENTIAL
FOIA CONFIDENTIAL TREATMENT REQUESTED
GRAND JURY MATERIALS UNDER FED. R. CRIM. P. 6
CONFIDENTIAL

DOJ-DISCA00000478

DISC000000508

B.   Company may, at any time and from time to time, during the First Season order the production of additional episodes of the Program (i.e., beyond the Initial Order) at the same terms and conditions applicable to the Initial Order ("Additional Episodes"), or reduce the number of episodes in an order of Additional Episodes. Notwithstanding the foregoing, if production ceases prior to Company's order of Additional Episodes and the number of episodes ordered is less than the number ordered in the previous order, then the parties agree that the line items in the budget affected by such reduction shall be negotiated in good faith.

C.   After the First Season, Company shall have unlimited, consecutive, exclusive options (each, an "Additional Season Option"), exercisable in Company's discretion, to engage Producer's services to produce and deliver to Company, additional seasons of the Program ("Season"). If Company has exercised its Additional Season Option, then Company may, at any time and from time to time, during the Season engage Producer and the Executive Producer to produce Additional Episodes of the Program (i.e., beyond Company's initial order for that particular Season) on the same terms and conditions applicable to the initial order for that Season. Notwithstanding the foregoing, if production ceases prior to Company's order of additional episodes and the number of episodes ordered is less than the number ordered in the previous order, then the parties agree that the line items in the budget affected shall be negotiated in good faith.

D.   Company may exercise each of its Season Options by giving Producer written notice of such exercise no later than 90 days from the initial telecast of the last episode in the applicable Season (or 120 days following delivery and acceptance of the last episode produced in the applicable Season, if earlier). For clarity, the Company's exercise of its Option for a future Season shall not prevent Company from making Additional Episode orders for the then-current Season at the same terms and conditions applicable to the then-current Season. If any Option is exercised by Company, all of the terms and conditions hereof shall be equally applicable to each Season of the Program and shall govern the respective rights, duties and obligations of the parties hereto with respect to each and all of such episodes produced in each Season, except only as follows:

(i)   The applicable production schedule, program materials and payment schedule shall be subject to Company's prior written approval with respect to each Season.

(ii)  The applicable production budget for the episodes ordered in each subsequent Season shall be approved by Company provided that (a) production budget increases or decreases shall reflect actual and direct costs of production of such episodes in the Season; and (b) the amount of the production budget shall not increase by more than five percent (5%) annually; it being understood that the foregoing cap will not apply to incremental increased costs approved by Company in writing and/or incurred as a result of material changes made by Company to the treatment or production requirements (e.g., new location, new talent, etc.).

November 5, 2008
*Little People Couple (wt)*
Network: TLC
Contract ID#: 1021931
Master Contract ID#: 1011286
CO/SE

4

HIGHLY CONFIDENTIAL
FOIA CONFIDENTIAL TREATMENT REQUESTED
GRAND JURY MATERIALS UNDER FED. R. CRIM. P. 6

CONFIDENTIAL

DOJ-DISCA00000479

DISC000000509

E. If, at any time prior to the completion of the production of the initial episodes in any Season, Company would like to order Additional Episodes, Producer shall submit a report which shall set forth in reasonable detail any and all cost savings in connection with said increase to the initial episode order.

F. In the event Producer is unable or declines to finance its portion of the production budget for any Season or order of Additional Episodes, Company shall have the right to commission any Additional Episodes and/or episodes for any subsequent Season from Producer such that Company shall assume the full cost of the production budget and own all rights in such Additional Episodes and/or subsequent Season throughout the world, in perpetuity.

G. Producer hereby grants to Company an exclusive right of first negotiation and last refusal with respect to the production, distribution and/or exhibition of any additional episode(s) or program(s) based on the Program ("Additional Programs"). Producer agrees to notify Company in writing in the event Producer (either itself or through any entity) elects to produce and/or distribute any Additional Programs and the parties shall negotiate exclusively for a period of thirty (30) days after Company's receipt of such notice with respect to the terms and conditions for Company's exploitation rights of such Additional Programs, such terms and conditions including the license fee, shall not be unreasonably different from the terms and conditions of this Agreement. If the initial negotiations with respect to any program shall not materialize into an agreement between the parties, Producer shall be free to enter into negotiations with any third party with respect to such Additional Programs. Upon reaching an agreement with any third party with respect to such Additional Programs, Producer shall notify Company of the agreed-upon terms and conditions and Company shall then have ten (10) business days to match the terms and conditions of such third-party agreement to obtain the rights to such Additional Programs as granted therein.

8. Additional Terms

A. (i) The fulfillment of Company's obligations set forth hereunder is expressly contingent upon (each, a "Contingency"):

(a) Full execution of a talent agreement between Producer and Jen Arnold and Bill Klein, which shall be subject to Company's final approval prior to its execution.

(b) Submission of a treatment for the Program approved by Company in writing.

November 5, 2008
*Little People Couple (wt)*
Network: TLC
Contract ID#: 1021931
Master Contract ID#: 1011286
CO/SE

5

HIGHLY CONFIDENTIAL
FOIA CONFIDENTIAL TREATMENT REQUESTED
GRAND JURY MATERIALS UNDER FED. R. CRIM. P. 6
CONFIDENTIAL

DOJ-DISCA00000480

DISC000000510

        (c)    In accordance with Exhibit J delivery to and approval by Company of customary background check(s) on Program participants/key production personnel and/or talent in the Program (as determined by Company) and Producer's assistance in obtaining any such background checks(s) if so requested by Company.

        (ii)    Producer understands that no portion of Company's Budget Contribution will be released until the Contingency is completely satisfied. Notwithstanding the foregoing, in the event that, for any reason, Company, in its discretion, elects to release a portion of the Budget Contribution hereunder prior to the satisfaction of the Contingency hereunder, such payment shall not be deemed a waiver of the applicable Contingency, and if any Contingency hereunder is not satisfied, Company has the right to terminate this Agreement by written notice to Producer, and Producer shall reimburse Company fully for all payments of the Budget Contribution previously made by Company hereunder as of the date of such termination.

    B.    The Pilot Program and all series episodes of the Program shall be delivered in High Definition pursuant to Company's NTSC Domestic Specifications as set forth in Exhibit J. All other Materials shall also be delivered in accordance with Exhibit J. The delivery date for the Materials of the Pilot Program shall be no later than January 18, 2009.

    C.    Notwithstanding the provisions of paragraph V. (Premiere) of the Amended and Restated Master Agreement to the contrary, Company's initial exhibition of the Program in the Territory shall be the world premiere in all media.

    D.    Producer hereby represents and covenants that it has, and all its employees, officers, directors, agents, consultants and other representatives engaged in carrying out the transactions or services contemplated by this Agreement (its "Representatives") have, complied with and will continue to comply with all applicable U.S. and non-U.S. laws, rules, regulations and decrees, including, without limitation, the Organization for Economic Cooperation and Development's Convention on Combating Bribery of Foreign Public Officials in International Business Transactions, effective February 15, 1999, the United States' Foreign Corrupt Practices Act, as amended, and other laws to combat bribery, conflicts of interest and corruption of governmental officials or employees, or political candidates or parties (each, a "Governmental Official"). Producer hereby covenants that neither it nor its Representatives will directly or indirectly make, give, promise or offer any payments or anything of value to any Governmental Official, or authorize the taking of any such action, for the purpose of influencing any act of such Governmental Official to obtain, retain or direct any business to any person or entity or gain any improper advantage, and Producer represents that neither it nor its Representatives have taken any such action. Producer covenants that neither it nor its Representatives, in connection with this Agreement and any services to be provided by it to Company or Company's affiliates, will engage, employ, retain or pay any other person or entity to provide consulting, lobbying, facilitation or similar professional services involving potential contact with any Governmental Official or anyone who is reasonably likely to be involved in influencing any Governmental

November 5, 2008
*Little People Couple (wt)*
Network: TLC
Contract ID#: 1021931
Master Contract ID#: 1011286
CO/SE

**HIGHLY CONFIDENTIAL**
**FOIA CONFIDENTIAL TREATMENT REQUESTED**
**GRAND JURY MATERIALS UNDER FED. R. CRIM. P. 6**

CONFIDENTIAL

DOJ-DISCA00000481

DISC000000511

Official, without Company's express written approval. Producer will keep books, accounts and records that accurately and fairly reflect in reasonable detail its transactions and disposition of funds paid in connection with carrying out the transactions or services contemplated by this Agreement. Any breach of or misrepresentation in this provision shall be deemed to be a material breach of this Agreement.

9.  Inclusion of Standard Terms and Conditions

The parties agree that except as expressly modified hereby, the Master Agreement shall be ratified, confirmed and included herein. In the event of any inconsistency between the terms of this Attachment and the Master Agreement, the terms of this Attachment shall govern.

IN WITNESS WHEREOF, the parties have executed this Attachment as of the latest date set forth below.

| LMNO CABLE GROUP, INC. | DISCOVERY COMMUNICATIONS, LLC |
|---|---|
| By: *Andrew Suser* | By: *[signature]* |
| Printed Name: ANDREW SUSER | Printed Name: Eileen P. O'Neill |
| Title: SrVP | Title: President & General Manager |
| Date: 12/16/08 | Date: Dec 22, 2008 |

*[initials] 12/22/08*

November 5, 2008
Little People Couple (wt)
Network: TLC
Contract ID#: 1021931
Master Contract ID#: 1011286
CO/SB

7

HIGHLY CONFIDENTIAL
FOIA CONFIDENTIAL TREATMENT REQUESTED
GRAND JURY MATERIALS UNDER FED. R. CRIM. P. 6
CONFIDENTIAL

DOJ-DISCA00000482

DISC000000512