# EXHIBIT B

Page 1

1                UNITED STATES DISTRICT COURT
2                CENTRAL DISTRICT OF CALIFORNIA
3
4    LMNO CABLE GROUP, INC. a        )
     California corporation,         )
5                                    )
     Plaintiff,                      )
6                                    )   CASE NO.
              vs.                    )   2:16-cv-4543-JAK-SK
7                                    )
     DISCOVERY COMMUNICATIONS,       )
8    LLC, a Delaware limited         )
     liability corporation,          )
9                                    )
     Defendant.                      )
10                                   )
     DISCOVERY COMMUNICATIONS,       )
11   LLC, a Delaware limited         )
     liability corporation,          )
12                                   )
     Counterclaim-Plaintiff,         )
13                                   )
              vs.                    )
14   LMNO CABLE GROUP, INC., a       )
     California corporation; LMNO    )
15   ENTERTAINMENT GROUP, LLC, a     )
     California limited liability    )
16   company,                        )
                                     )
17   Counterclaim-Defendants.        )
                                     )
18   _____)
19       VIDEOTAPED DEPOSITION OF LISA WILLIAMS-FAUNTROY
20              Los Angeles, California
21              Tuesday, May 9, 2017
22
23
24   Job No. 123962
25   Reported by:  NIKKI ROY, CSR No. 3052

Page 227

1           THE WITNESS:  Because it says "up to."

2    BY MR. NELSON:

3       Q.   Turn to the second page, Section 3 "grant of

4    rights."

5            What is the purpose of the grant of rights?

6       A.   In this particular contract?

7       Q.   Yes.

8       A.   The purpose of the grant of rights is to set

9    forth the term, the territory and the media that the

10   network or the company has been granted in exchange

11   for its contribution.

12      Q.   All right.  So the grant of rights is

13   essentially setting forth the rights that Discovery

14   will have to exhibit the program under this contract,

15   correct?

16      A.   Correct.

17      Q.   All right.  And specifically -- and so -- so

18   under the grant of rights, Discovery is a licensee,

19   correct?

20           MS. BROWN:  Objection to the form.

21           You can answer.

22           THE WITNESS:  Correct.

23   BY MR. NELSON:

24      Q.   Right.  And since it's a co-production LMNO,

25   maintains the copyright, correct?

Page 228

1      A.   Generally yes, I haven't looked at and can

2   if you like for me to see otherwise; but generally,

3   yes.  In this particular, at the time this was done,

4   the producer retained the copyright and licensed the

5   rights to the company.

6      Q.   Right.  And then aside from the rights

7   expressly granted to Discovery, here LMNO would

8   maintain whatever other rights exist in the program,

9   correct?

10         MS. BROWN:  Objection to the form of the

11   question.

12         THE WITNESS:  Unless there's something else

13   listed in the contract, yes.

14   BY MR. NELSON:

15      Q.   All right.  And so this -- this grant of

16   rights for -- for The Little Couple attachment here

17   provides for the North American territory, correct?

18      A.   Correct.

19      Q.   And for Discovery to be able to exhibit the

20   program in all media, correct?

21      A.   Correct.

22      Q.   And then it sets forth an exhibition period

23   of five years commencing on the earlier of (A) the

24   first exhibition of the program in the territory and

25   (B) the date February 15, 2009; is that correct?

1    A.    Correct.

2    Q.    And so where the exhibition period language

3  is written, would it be correct that the latest date

4  upon which the exhibition period would commence would

5  be February 15, 2009, correct?

6    A.    The latest date, let's see.  Well, it's five

7  years commencing on the earlier of.  So, no, it could

8  be -- it could be February 15, 2009 is the earliest

9  date or the first exhibition of the program.

10    Q.    Well, no.  I'm saying commencing on the

11  earlier of so it's the -- it's talking about the

12  first to occur of the two -- two provisions, correct?

13    A.    Right.

14    Q.    Right.  So -- so it's possible that (A) may

15  occur before February 15, 2009, correct?

16    A.    Oh, yes.  Sorry.  Yes.

17    Q.    Right.  I'm saying even -- even if the first

18  exhibition of the program occurs after February 15,

19  2009, the exhibition period under this provision

20  would still begin on February 15, 2009, correct?

21          MS. BROWN:  Objection to the form.

22          THE WITNESS:  Yes.

23  BY MR. NELSON:

24    Q.    All right.  And so to circle around the

25  latest that this exhibition period could commence

1   would be February 15, 2009, correct?

2       A.   Yes.

3       Q.   And since it's a five-year exhibition

4   period, the latest it would expire would be

5   February 15, 2014, correct?

6       A.   Yes, absent some additional provision

7   extending it --

8       Q.   Right.

9       A.   -- or some other term -- other term that

10  grants rights to the company.

11      Q.   Right.  So the parties may extend this by

12  some other agreement, correct?  But under this

13  agreement itself, if it's not -- not changed, the

14  exhibition period would expire on February 15, 2004

15  sometime prior to that, correct?

16           MS. BROWN:  Objection to the form.  I think

17  you misspoke.

18  BY MR. NELSON:

19      Q.   I'll --

20      A.   You mean 2014?

21      Q.   I'll just rephrase that.

22      A.   Yeah, please.

23      Q.   So absent some -- some separate agreement

24  extending the exhibition period under -- under this

25  agreement, the exhibition period would expire no

Page 231

1   later than February 15, 2014, correct?

2        A.   Not necessarily.

3        Q.   In -- in what situation would it expire

4   after then?

5        A.   Well, give me a moment.

6        Q.   Do you believe that there's another

7   agreement that may affect the exhibition period?

8        A.   I'm looking to answer your question.  I want

9   to make sure I get it right.

10       Q.   I'm not -- I'm not going to focus on any

11  other agreement, so if there's something that somehow

12  adjusts the exhibition period in another agreement,

13  that won't be -- that's not included in the question.

14  Just looking at this provision itself, would you

15  agree that this provision would be interpreted such

16  that the last date on which the exhibition period

17  would expire would be February 15, 2014?

18       A.   Well, the reason I asked for some time is

19  because you can't read a paragraph on its own.  It

20  has to be read in the full context of the contract.

21  So that's why I want to check before I answer the

22  question.

23       Q.   What other provision of a contract do you

24  believe may have an effect on your interpretation of

25  this provision?

Page 232

1      A.    I don't have an answer because I'm looking

2   to see.

3      Q.    I understand, but we can't have you review

4   the entire contract every time we ask you a question,

5   especially when I'm focusing on this one particular

6   provision.

7      A.    I'm not reading the whole contract.

8          MS. BROWN:  Hold on, Counsel.  You asked her

9   a question.  She's here on contract interpretation

10  and negotiation.  And she's going to be careful with

11  her answers to look at the contracts to provide

12  Discovery's position on the interpretation.

13          So if you have a question that requires her

14  to look at that document, she is entitled to take as

15  long as she needs to look at that to properly and

16  truthfully answer your question.

17          MR. NELSON:  Why don't we go off the record.

18  Let me know when you're ready.

19          MS. BROWN:  Let's take our break now.  We're

20  up for a break anyway now.

21          And what's your pending question?

22          MR. NELSON:  The question is whether the

23  provision here would be interpreted such that the

24  latest date on which the exhibition period would

25  expire would be February 15, 2014.

1          THE WITNESS:  That's what I was looking to

2     answer that.  I wasn't delaying.  I really want to

3     answer it right so I don't want to... are we taking a

4     break?

5          MS. BROWN:  Do you need one or do you want

6     to keep going?

7          You can -- you can answer subject to what

8     you've reviewed so far and if there's a need at a

9     later break to review more and supplement your

10    answer, we can do that in the interest of time.

11         THE WITNESS:  Can I come back to it or?

12         MS. BROWN:  Why don't you just testify

13    subject to what you've reviewed so far and when we

14    take our proper break, we'll give you a little extra

15    time to review.

16         THE WITNESS:  Okay.

17         MS. BROWN:  And if we need to come back on

18    the record, I'm sure counsel will accommodate us in

19    supplementing our answer.

20         THE WITNESS:  Okay.  So we can go back on

21    and continue.

22    BY MR. NELSON:

23         Q.   Okay.  We're -- we're still on.

24         A.   Okay.

25         Q.   So the question -- the question is based on

Page 234

1   the language of this grant of rights would Discovery

2   interpret this provision as providing that the latest

3   date upon which this exhibition period could expire

4   would be February 15, 2014?

5       A.   Yes, I'm giving that answer subject to being

6   able to review and more fully give -- give a complete

7   answer potentially.

8       Q.   Right.  And -- and you're saying that there

9   may be another provision somewhere in the contract

10  that modifies that, correct?

11      A.   Or that could affect the answer, yes.  But

12  that could affect the answer to not be what I gave

13  just now.

14      Q.   Well, would it -- would it -- would

15  something else in the contract affect the

16  interpretation of this language?

17      A.   Potentially, and that's what I want to look

18  at later.  I want -- I want to get this right, I

19  don't want to just answer something and not get it

20  right, so.

21          MR. NELSON:  Well, why don't we take a break

22  and you can look at that.  We'll go off the record.

23          MS. BROWN:  Okay.  Let's go off.

24          THE VIDEOGRAPHER:  This concludes DVD

25  number 3.  We're now going off the video record.  The

1    time is 3:45.

2              (Recess held 3:45 p.m. to 3:50 p.m.)

3              THE VIDEOGRAPHER:  Back on the video record.

4    This is DVD number 4.  The time is 3:50.

5    BY MR. NELSON:

6        Q.   All right.  So when we took a break, you

7    reviewed the contracts with the idea of trying to

8    determine whether there's anything that would change

9    the interpretation that you provided for the grant of

10   rights in the co-production attachment; is that

11   correct?

12             MS. BROWN:  Objection to the form.  Let's

13   state what she did review on the record so we're

14   clear what her testimony is regarding.

15             THE WITNESS:  Your last question was, is

16   there any reason -- I'm rephrasing but would

17   February 15, 2009 be the last date, correct?

18   BY MR. NELSON:

19       Q.   Not my -- my question is, would Discovery

20   interpret this exhibition period provision as

21   providing that February 15, 2014 would be the last

22   date upon which the exhibition period could expire?

23       A.   Yes, unless it was amended.

24       Q.   Okay.  And assuming it's not amended and the

25   exhibition period expires on February 15, 2014, would

Page 252

1           THE WITNESS.  Okay.  Thanks.

2           THE VIDEOGRAPHER:  Off video, 4:16.

3           (Recess held 4:16 p.m. to 4:26 p.m.)

4           THE VIDEOGRAPHER:  Back on the video record,

5    4:26.

6           MR. NELSON:  I'll mark as Exhibit 14

7    document Bates-labeled Discovery 265 through 285,

8    entitled "Little People Couple Amendment 1."

9           (Exhibit 14 Letter from Discovery

10          Communications to Andrew Suser,

11          February 17, 2009, DISC000000265

12          through DISC000000285, marked for

13          identification as of this date.)

14   BY MR. NELSON:

15      Q.   Does this appear to be amendment 1 to the

16   Little People attachment that we just looked through?

17      A.   Yes.

18      Q.   If you turn to the second page, it states:

19          (Reading:)  Except as otherwise

20          herein amended and supplemented, the

21          agreement between us is in all other

22          aspects hereby ratified and

23          confirmed.

24          Would that be interpreted to mean that

25   unless this amendment specifically provides otherwise

Page 253

1    that the terms of the agreement set forth in the

2    co-production attachment and the masters remains in

3    effect?

4         A.    It just means unless it's amended.  So if

5    it's amended, either the master or this attachment

6    then otherwise the terms are ratified.

7         Q.    Right.  Could you tell me if there is any

8    provision in this amendment that either amends or

9    supplements the grant of rights that we discussed in

10   the attachment?

11        A.    I'm not aware of anything that changes the

12   rights granted.

13        Q.    Okay.  So would the grant of rights then

14   refer -- well, the amendment 1 addresses the Season 1

15   of The Little Couple, correct?

16        A.    Well, reference is made to the co-production

17   attachment which is the first -- it was the pilot.

18   And then pursuant to paragraph 1 of the amendment,

19   company exercises its first season option.

20        Q.    All right.  So company exercises its first

21   season option to engage producer services to produce

22   and deliver to company an initial season of 12

23   episodes based on the pilot program, each which will

24   be 30 minutes in commercial length, correct?

25        A.    Correct.

Page 254

1        Q.    And so this amendment applies to the

2    production of these 12 episodes of Season 1, correct?

3        A.    Well, this amendment exercises the option to

4    produce those 12 episodes.

5        Q.    Right.  And then --

6        A.    Uh-huh.

7        Q.    -- it sets forth the terms under which those

8    episodes will be produced, correct?

9        A.    In part.  It sets forth the terms here but

10   again you have to look at all the previous agreements

11   that govern the contract.

12       Q.    Correct.

13       A.    So --

14       Q.    E- -- except to the extent as amended in

15   amendment 1, the prior terms still -- still apply,

16   correct?

17       A.    Correct.

18       Q.    All right.  So with respect to this grant of

19   rights, would you agree that the grant of rights with

20   respect to these 12 episodes of Season 1 remains the

21   same as the grant of rights that was set forth in the

22   co-production attachment?

23       A.    That -- well, the -- let me just look and

24   see if --

25              (Document reviewed by witness.)

Page 255

1          THE WITNESS:  Yes.

2    BY MR. NELSON:

3          Q.   Okay.  So the Discovery license for these

4    episodes in Season 1 of The Little Couple would still

5    be for all media in the North American territory,

6    correct?

7          A.   Yes.

8          Q.   And the exhibition period would still expire

9    no later than February 15, 2014, correct?

10         A.   Well, if it could have aired on a date five

11   years from when it aired.

12         Q.   But we agreed that the exhibition period

13   under the grant of right began and expired at the --

14   well, began at the earlier of the first exhibition of

15   the program and the date February 15, 2009, correct?

16         A.   Correct.

17         Q.   So we also agreed that this grant of rights

18   was, no matter what, expired no later than

19   February 15, 2014, correct?

20         A.   Yes.

21         Q.   So with respect to amendment 1?

22         A.   I'm sorry.  Hold on one second.  Strike

23   that.  I just want to confirm my answer.  Hold on.

24              (Document reviewed by witness.)

25              THE WITNESS:  Okay.

1    BY MR. NELSON:

2         Q.   So with respect to amendment 1, since that

3    grant of rights has not been changed in the

4    amendment, the exhibition period would still expire

5    no later than February 15, 2014, correct?

6         A.   Absent -- I don't see anything that changes

7    that specifically.

8         Q.   At least at this point, there may be --

9         A.   Correct.

10        Q.   -- further amendments that changes it,

11   correct.  But just looking at the amendment 1,

12   nothing -- nothing would change that, correct?

13        A.   Correct.

14             MR. NELSON:  Exhibit 15, document

15   Bates-labeled Discovery 286 through Discovery 289.

16   This is Little People Couple amendment 2.

17             (Exhibit 15 Letter from Discovery

18             Communications to Andrew Suser,

19             June 23, 2009, Bates-stamped

20             DISC000000286 through DISC000000289

21             stamped, marked for identification as

22             of this date.)

23   BY MR. NELSON:

24        Q.   And does this apply to two additional

25   episodes of the program that are to be delivered as

Page 257

1    part of the first season of the program?

2        A.   Yes.

3        Q.   Is there anything in this amendment that

4    changes the grant of rights granted in the

5    attachment?

6        A.   I don't see anything.

7        Q.   So the exhibition period for these two

8    episodes of the program would also expire no later

9    than February 15, 2014, correct?

10       A.   Absent something saying otherwise which I

11   haven't -- you know, I haven't looked through all my

12   contracts to see if there is.

13           MR. NELSON:  Exhibit 16.  This is

14   Bates-labeled Discovery 290 through 309, and this is

15   a Little People Couple amendment 3.

16           (Exhibit 16 Letter from Discovery

17           Communications to Andrew Suser, August

18           24, 2009, Bates-stamped DISC000000290

19           through DISC000000309, marked for

20           identification as of this date.)

21   BY MR. NELSON:

22       Q.   And does this apply to the terms and

23   conditions under which LMNO shall produce 18 episodes

24   of the program as part of Season 2?

25       A.   Yes.

Page 258

1      Q.   Is there anything in this amendment that

2   amends or supplements the grant of rights in the

3   attachment?

4      A.   Not that I'm aware.

5      Q.   So the exhibition period for these 18

6   episodes governed by amendment 3 would also expire no

7   later than February 15, 2014, correct?

8      A.   As far as I can tell, yes.

9      MR. NELSON:  Marking Exhibit 17, Discovery

10  310 through 324, and this is amendment 4 to the

11  Little Couple, formerly known as Little People

12  Couple.

13         (Exhibit 17 Letter from Discovery

14         Communications to Andrew Suser,

15         February 11, 2010, Bates-stamped

16         DISC000000310 through DISC000000324,

17         marked for identification as of this

18         date.)

19  BY MR. NELSON:

20      Q.   If you turn to the second page,

21  paragraph 2 -- sorry -- it provides that company

22  exercise its additional season option for LMNO to

23  produce 20 additional episodes and program as part of

24  Season 3; is that correct?

25      A.   To produce and deliver 20 additional

1   episodes Season 3, yes.

2       Q.   Is there anything in this amendment that

3   amends or supplements the grant of rights provided

4   for in the attachment?

5       A.   No, not -- hold on one moment.  Not that I'm

6   aware.

7       Q.   So the exhibition period for the 20 episodes

8   of Season 3 governed by this amendment would also

9   expire no later than February 15, 2014, correct?

10      A.   Absent something; otherwise, yes.

11           MR. NELSON:  Exhibit 18.  This is document

12  Bates-labeled Discovery 325 through 348.  Little

13  Couple amendment 5.

14           (Exhibit 18 Letter from Discovery

15           Communications to Andrew Suser,

16           September 10, 2010, Bates-stamped

17           DISC000000325 through DISC000000348,

18           marked for identification as of this

19           date.)

20  BY MR. NELSON:

21      Q.   And if you look at paragraph 1, it generally

22  states that Discovery is exercising its option for 24

23  additional episodes which will be part of Season 4;

24  is that correct?

25      A.   Yes.

Page 260

1      Q.   Do you see anything in this amendment which

2  amends or supplements the grant of rights provided in

3  the attachment?

4      A.   Not that I can see.

5      Q.   So would you agree that the exhibition

6  period for the 24 episodes of Season 4 would expire

7  no later than February 15, 2014?

8      A.   Yes.

9           MR. NELSON:   Exhibit 19, document

10 Bates-labeled Discovery 349 through 351 is The Little

11 Couple amendment 6.

12          (Exhibit 19 Letter from Discovery

13          Communications to Andrew Suser,

14          October 7, 2011, Bates-stamped

15          DISC000000349 through DISC000000351,

16          marked for identification as of this

17          date.)

18 BY MR. NELSON:

19     Q.   And if you look at paragraph 1, it states

20 generally that Discovery is ordering 24 additional

21 episodes which will be part of Season 5 of the

22 program; is that correct?

23     A.   Yes.

24     Q.   Do you see anything in this amendment that

25 amends or supplements the grant of rights in the

Page 261

1    attachment?

2         A.    No.

3         Q.    So the exhibition period for the 24 episodes

4    of Season 5 governed by this amendment would expire

5    on no later than February 15, 2014, correct?

6         A.    Absent something specifying it, correct.

7               MR. NELSON:   Exhibit 20, document

8    Bates-labeled LMNO 17729 through LMNO 17748.

9               (Exhibit 20 Letter from Discovery

10              Communications to Andrew Suser,

11              October 19, 2011, Bates-stamped

12              LMNO0017729 through LMNO0017748,

13              marked for identification as of this

14              date.)

15   BY MR. NELSON:

16        Q.    Do you see anything in this amendment that

17   amends or supplements the grant of rights in the

18   attachment?

19        A.    Not that I'm aware.

20              MR. NELSON:   Exhibit 21, Bates-labeled

21   Discovery 354 through 366 is The Little Couple

22   amendment 9.

23              (Exhibit 21 Letter from Discovery

24              Communications to Andrew Suser,

25              November 29, 2011, Bates-stamped

1      Q.    So you're -- you're saying as a

2   representative of Discovery to discuss the contract

3   for 7 Little Johnstons you cannot testify as to

4   whether Discovery provided a written notice of its

5   exercise of the option to produce Season 2 of 7

6   Little Johnstons?

7      A.    No.

8            MS. BROWN:  Objection --

9            THE WITNESS:  No.

10            MS. BROWN: -- to the form of the question.

11            THE WITNESS:  No, that's not what I'm

12   saying.

13   BY MR. NELSON:

14      Q.    Well, did Discovery provide written notice

15   of its exercise of the option to produce a second

16   year of 7 Little Johnstons?

17      A.    I know that notice was given.

18      Q.    Was there a writing executed by both parties

19   concerning the production of Season 2 of 7 Little

20   Johnstons?

21      A.    No, not that I'm aware.

22      Q.    Without a writing executed by both parties,

23   what would the agreement between Discovery and LMNO

24   be for the production of Season 2 of 7 Little

25   Johnstons?

Page 295

1        A.    It would be -- for this one, it was an

2   agreement between the parties on a production -- on a

3   week -- on a few-weeks-by-few-weeks basis to pay for

4   the production and produce the show.

5        Q.    And was that agreement pursuant to the

6   attachment?

7        A.    It was -- it was pursuant to -- well, the

8   master agreement and the attachment were still in

9   place.

10       Q.    I'm -- I'm saying was the agreement under

11   the attachment in the master agreement?

12       A.    The --

13       Q.    Or was it separate from the attachment in

14   the master agreement?

15       A.    It was governed by the two documents that

16   govern the 7 Little Johnstons first ep- -- first

17   pilot or first episode.

18       Q.    But it wasn't part of a writing executed by

19   the parties, was it?

20            MS. BROWN:  Objection to the form.

21            THE WITNESS:  There was no executed contract

22   for that.

23   BY MR. NELSON:

24       Q.    Right.  I think -- I think we agreed that

25   the agreement including the amendment could only be