# EXHIBIT E



One Discovery Place
Silver Spring, MD 20910-3354

**APPROVED BY LEGAL**

## COPRODUCTION ATTACHMENT FOR NEW PROGRAM

ATTACHMENT, between **LMNO CABLE GROUP** ("Producer"), a California corporation with offices at 15821 Ventura Boulevard, Suite 320, Encino, California 91436 on the one hand, and **DISCOVERY COMMUNICATIONS, LLC (f/k/a DISCOVERY COMMUNIATIONS, INC.)** ("Company"), a Delaware corporation with offices at One Discovery Place, Silver Spring, Maryland 20910, on the other hand, dated July 3, 2008 ("Attachment") to the Master Agreement, dated January 8, 2002, as amended in the Amended and Restated Master, dated December 10, 2002, between Producer and Company (collectively, "Agreement").

Now therefore, in consideration of the foregoing and of the mutual promises and covenants contained herein, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. The Program

| PROGRAM WORKING TITLE ("Program") | PROGRAM DESCRIPTION | # OF EPISODES | COMMERCIAL LENGTH |
|---|---|---|---|
| Unusual Suspects | An Army pilot. A mother. An optometrist. What do all these people have in common? They were busy professionals, respected role models and trusted members of their community -- until the day each of them was charged with a heinous crime. | ▮ | ▮ |

*The Program is based on the Production Budget attached hereto as Exhibit G and the Production Schedule attached hereto as Exhibit I. The Program Materials shall be delivered in accordance with Exhibit J attached hereto and the Technical Specifications attached hereto as Exhibit K.

2. Budget Contribution

A. In consideration for the performance by Producer of its obligations hereunder and in full discharge of all of Company's obligations to Producer in connection with the Program, Company agrees to pay Producer, and Producer agrees to accept, the amount(s) set forth hereafter:

July 3, 2008
*Unusual Suspects*

Discovery Channel • TLC • Animal Planet • The Science Channel • Discovery Health Channel • Planet Green • Discovery Kids
Military Channel • Investigation Discovery • Times Channel • Discovery HD Theater • FitTV • Discovery Home Channel • Discovery en Español
Discovery Kids en Español • Travel Channel • BBC America • BBC World • Discovery Civilisation Channel • Discovery Geschichte • People + Arts
Discovery Travel & Living • Discovery Home & Health • Discovery Real Time • Discovery Real Time Extra • Discovery Science Channel
Discovery Turbo • Discoverystore.com • Discovery.com • Cosmeo • unitedstreaming • Discovery Health Connection
Assignment Discovery • Discoveryschool.com

**HIGHLY CONFIDENTIAL**
**FOIA CONFIDENTIAL TREATMENT REQUESTED**
**GRAND JURY MATERIALS UNDER FED. R. CRIM. P. 6**

CONFIDENTIAL

DOJ-DISCA00000800

DISC000000830

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ (the "Budget Contribution") payable in accordance with the Payment Schedule attached hereto as Exhibit H. Notwithstanding any provisions of the Amended and Restated Master Agreement (including any Exhibits) to the contrary, it is acknowledged and agreed that any payments to Producer by Company after delivery of any Program Materials under the Agreement, including the final Program Materials, will not constitute approval by Company of the applicable Program Materials in whole or in part or waiver of Company's rights with respect to any applicable breach. Further, in the event Company, in its sole discretion, elects to pay Producer any portion of the Budget Contribution in advance of completion of the applicable payment milestone set forth in the Payment Schedule, such payment shall not relieve Producer of any of its obligations to complete the applicable milestone nor be deemed a waiver by Company of any other obligation of Producer hereunder.

B. For purposes of clarity, the Production Budget attached hereto includes an approved "Producer Fee" to be retained by Producer for the Program equal to ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ final, approved, going-in budget (for hard production costs only and shall in no event include any costs such as agency fees, talent fees, interest, financing charges/fees, bank fees, currency fluctuation reserves, deferments, contingencies, completion bond fees, contestant prize money, breakage, overages, non-customary legal fees, fees payable to Company's designated producers and/or accountants, settlement amounts and residuals. The Producer Fee shall cover (i.e., Producer shall use such amount to discharge) Producer's production company fee and the Executive Production services of Eric Schotz.

3. Grant of Rights

| MEDIA | TERRITORY | EXHIBITION PERIOD |
|---|---|---|
| Non Standard Television | • North American Territory | With respect to the ▆▆▆▆▆▆ ▆▆▆▆▆▆ in such Territory, commencing on the earlier of (a) the first exhibition of the applicable episode in the relevant Territory; and (b) ▆▆▆ |

*Limited language rights and/or non-exclusive rights, if applicable, are denoted parenthetically next to the applicable Territory above.*

4. Credits

July 3, 2008
*Unusual Suspects*
Network: ID
Contract ID#: 1020629
Master Contract ID#: 1000883
KS / OL

2

HIGHLY CONFIDENTIAL
FOIA CONFIDENTIAL TREATMENT REQUESTED
GRAND JURY MATERIALS UNDER FED. R. CRIM. P. 6

CONFIDENTIAL

DOJ-DISCA00000801

DISC000000831

      The parties agree that the Program and all versions thereof shall contain the following production credit for Company and Producer (Producer's credit in text form) in all media throughout the world:

**PRODUCED BY LMNO CABLE GROUP FOR INVESTIGATION DISCOVERY**

      At its option and expense, Company may substitute another Company entity in the production credit or remove its credit.

5.    <u>Company Revenue Participation/Company Shall Receive</u>

      [REDACTED] of Producer's Adjusted Gross Revenues from all media in perpetuity calculated in accordance with Exhibit F of this Attachment.

6.    <u>Key Person</u>

| NAME OF INDIVIDUAL | SERVICE TO BE PERFORMED |
|---|---|
| *Eric Schotz* | Executive Producer |

7.    <u>Additional Terms</u>

    A.  (i)  The fulfillment of Company's obligations set forth hereunder is expressly contingent upon (each, a "Contingency"):

        (a)  Submission of a treatment for the Program approved by Company in writing.

        (ii)  Producer understands that no portion of Company's Budget Contribution will be released until the Contingency is completely satisfied. Notwithstanding the foregoing, in the event that, for any reason, Company, in its discretion, elects to release a portion of the Budget Contribution hereunder prior to the satisfaction of the Contingency hereunder, such payment shall not be deemed a waiver of the applicable Contingency, and if any Contingency hereunder is not satisfied, Company has the right to terminate this Agreement by written notice to Producer, and Producer shall reimburse Company fully for all payments of the Budget Contribution previously made by Company hereunder as of the date of such termination.

    B.  Notwithstanding the provisions of paragraph V. (<u>Premiere</u>) of the Amended and Restated Master Agreement to the contrary, Company's initial exhibition of the Program in the Territory shall be the world premiere in all media.

8.    <u>Additional Programs</u>

July 3, 2008
*Unusual Suspects*
Network: ID
Contract ID#: 1020629
Master Contract ID#: 1000883
KS / OL

HIGHLY CONFIDENTIAL
FOIA CONFIDENTIAL TREATMENT REQUESTED
GRAND JURY MATERIALS UNDER FED. R. CRIM. P. 6

CONFIDENTIAL

DOJ-DISCA00000802

DISC000000832

A.   Company shall have an exclusive option (the "Pilot Option"), exercisable in Company's discretion, to engage Producer's services to produce and deliver to Company an initial order ("Initial Order") of episodes based on the Pilot for the Initial Production Year (as defined below). Company may exercise its Pilot Option by giving Producer written notice of such exercise no later than ▮▮▮ after the first exhibition of the Pilot. If the Pilot Option is exercised by Company, all of the terms and conditions hereof shall be equally applicable to each and all of the episodes of the Initial Order and shall govern the respective rights, duties and obligations of the parties hereto with respect to each and all of such episodes, except as set forth in section 8.B. (i) and (ii) below. If Company exercises its Pilot Option, Company may, at any time and from time to time, order the production of additional episodes ("Additional Episodes") of the Program (i.e., beyond the Initial Order) for the Initial Production Year (as defined below) upon the same terms and conditions as set forth herein for the Initial Order of the Program (the "Initial Order Option"). For purposes hereof, "Initial Production Year" means the ▮▮▮ ▮▮▮ commencing with the taping of the initial episode immediately following the end of the prior Production Year being referred to as the "Second Production Year," "Third Production Year" and so forth (the Initial Production Year, Second Production Year, Third Production Year and so forth being each alternatively referred to herein as a "Production Year").

B.   After the Initial Production Year, Company shall have unlimited consecutive, exclusive options (each, an "Option"), exercisable in Company's discretion, to engage Producer's services to produce and deliver to Company episodes in subsequent Production Years of the Program. In each Production Year after any Option is exercised (as such term is defined below), Company shall have further right, exercisable by written notice at any time during the then-current Production Year to engage Producer to produce Additional Episodes of the Program within the same Production Year (the "Additional Episodes Option") upon the same terms and conditions applicable to the Option exercised by Company for that Production Year. Company may exercise its Option for each new Production Year by giving Producer written notice of such exercise no later than ▮▮▮ following the initial exhibition of the last episode in the immediately prior Production Year. If any Option is exercised by Company, all of the terms and conditions hereof shall be equally applicable to each Production Year of the Program and shall govern the respective rights, duties and obligations of the parties hereto with respect to each and all of such episodes produced in each Season, except only as follows:

(i)   The applicable production schedule, program materials and payment schedule for the Additional Episodes of a new Production Year shall be subject to Company's reasonable prior written approval with respect to each Season.

(ii)   The applicable production budget for the episodes for the Initial Order, which shall be approved by Company, shall not exceed ▮▮▮ per episode. The production budget for the applicable Additional Episodes ordered for each new Production Year shall be subject to Company's prior

July 3, 2008
*Unusual Suspects*
Network: ID
Contract ID#: 1020629
Master Contract ID#: 1000883
KS / OL

4

HIGHLY CONFIDENTIAL
FOIA CONFIDENTIAL TREATMENT REQUESTED
GRAND JURY MATERIALS UNDER FED. R. CRIM. P. 6

CONFIDENTIAL

DOJ-DISCA00000803

DISC000000833

written approval provided that (a) production budget increases or decreases shall reflect actual and direct costs of production of such Additional Episodes in the Production Year; and (b) the amount of the applicable production budget shall not increase by more than ▇▇▇ the amount of the production budget in the immediately preceding Production Year.

C. In the event Company elects to order Additional Programs, the budget for the Additional Programs shall be no greater than that of the initial episodes ordered for that Season; provided, however, in the event Producer is no longer in active production on the initial order for that Season and Company's episodic order is less than the initial order of episodes for that Season, the parties will negotiate in good faith an increase (if any) in the budget line items affected by such episodic reduction.

D. If requested by Company when ordering Additional Episodes of the Program, Producer shall submit, on a timely basis, a report setting forth in reasonable detail any and all cost savings that may be incurred by Producer in connection with increases to the Initial Order or applicable Option exercised, as the case may be.

E. In the event Producer is unable to finance its portion of the production budget for any Production Year, Company shall have the right to commission any Additional Episodes and/or episodes for any subsequent Production Year from Producer such that Company shall assume the full cost of the production budget and own all rights in such Additional Episodes and/or subsequent Production Year throughout the world, in perpetuity.

9. Inclusion of Standard Terms and Conditions

The parties agree that except as expressly modified hereby, the Master Agreement shall be ratified, confirmed and included herein. In the event of any inconsistency between the terms of this Attachment and the Master Agreement, the terms of this Attachment shall govern.

IN WITNESS WHEREOF, the parties have executed this Attachment as of the latest date set forth below.

| LMNO CABLE GROUP | DISCOVERY COMMUNICATIONS, LLC |
|---|---|
| By: _Andrew Jusy_ | By: _[signature]_ |
| Printed Name: ANDREW JUSER | Printed Name: W.C. SUMING |
| Title: Sr VP | Title: VP MARKETING MTJ |
| Date: 7/15/08 | Date: 7/18/08 |

July 3, 2008
*Unusual Suspects*
Network: ID
Contract ID#: 1020629
Master Contract ID#: 1000883
KS / OL

APPROVED
BY LEGAL

5

HIGHLY CONFIDENTIAL
FOIA CONFIDENTIAL TREATMENT REQUESTED
GRAND JURY MATERIALS UNDER FED. R. CRIM. P. 6
CONFIDENTIAL

DOJ-DISCA00000804

DISC000000834