# EXHIBIT A

# LMNO Cable Group, Inc. vs. Discovery Communications, LLC

## Videotaped Deposition of
## WILLIAM W. KLEIN, JR.
## January 12, 2018
## ***HIGHLY CONFIDENTIAL***





www.aptusCR.com / 866.999.8310

Case 2:16-cv-04543-JAK-SK   Document 255-2   Filed 02/26/18   Page 3 of 20   Page ID #:8394

Highly Confidential

William W. Klein, Jr.

LMNO Cable Group, Inc. vs.
Discovery Communications, LLC

```
 1                UNITED STATES DISTRICT COURT

 2     CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

 3  LMNO Cable Group, Inc. a
    California Corporation,
 4          Plaintiff,              Case No.
       vs.                          2:16-cv-4543-JAK-SK
 5  Discovery Communications, LLC, a
    Delaware Limited Liability
 6  Company,
            Defendant.
 7  _____

 8  Discovery Communications, LLC, a
    Delaware Limited Liability Company
 9          Counterclaimant,
       vs.
10  LMNO Cable Group, Inc., a
    California Corporation; LMNO
11  Entertainment Group, LLC, a
    California Limited Liability
12  Company;
            Counterdefendants.
13  _____

14  William Klein, an individual;
    Jennifer Arnold, an individual;
15  and Candu Enterprises, Inc., a
    Texas Corporation
16          Plaintiff-Intervenors,
       vs.
17  LMNO Cable Group Inc., a
    California Corporation; Eric
18  Schotz, an individual; and Edward
    Horwitz, an individual
19          Defendants.

20  _____

21             *** HIGHLY CONFIDENTIAL ***
       VIDEOTAPED DEPOSITION OF WILLIAM W. KLEIN, JR.
22                 Los Angeles, California
                    January 12, 2018
23  Reported by:
    MARLA SHARP,
24  RPR, CLR, CCRR, CA CSR
    11924, OR CSR 17-0446, WA CSR 3408
25  JOB NO.: 10039173
```

CERTIFIED ORIGINAL

Case 2:16-cv-04543-JAK-SK   Document 255-2   Filed 02/26/18   Page 4 of 20   Page ID #:8395

Highly Confidential    LMNO Cable Group, Inc. vs.
William W. Klein, Jr.    Discovery Communications, LLC

```
 1           UNITED STATES DISTRICT COURT

 2    CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

 3   LMNO Cable Group, Inc. a
     California Corporation,
 4            Plaintiff,              Case No.
         vs.                          2:16-cv-4543-JAK-SK
 5   Discovery Communications, LLC, a
     Delaware Limited Liability
 6   Company,
              Defendant.
 7   _____

 8   Discovery Communications, LLC, a
     Delaware Limited Liability Company
 9            Counterclaimant,
         vs.
10   LMNO Cable Group, Inc., a
     California Corporation; LMNO
11   Entertainment Group, LLC, a
     California Limited Liability
12   Company;
              Counterdefendants.
13   _____

14   William Klein, an individual;
     Jennifer Arnold, an individual;
15   and Candu Enterprises, Inc., a
     Texas Corporation
16            Plaintiff-Intervenors,
         vs.
17   LMNO Cable Group Inc., a
     California Corporation; Eric
18   Schotz, an individual; and Edward
     Horwitz, an individual
19            Defendants.
     _____

20

21

22

23

24

25
```

```
 1        Highly confidential videotaped deposition of
 2   WILLIAM W. KLEIN, JR., taken on behalf of
 3   Plaintiff/Counter-Defendant, at 2029 Century Park
 4   East, Suite 300, Los Angeles, California, beginning
 5   at 10:07 a.m. and ending at 3:43 p.m. on Friday,
 6   January 12, 2018, before Marla Sharp, RPR, CLR,
 7   CCRR, CSR No. 11924, a Certified Shorthand Reporter
 8   in and for the State of California.
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Case 2:16-cv-04543-JAK-SK Document 255-2 Filed 02/26/18 Page 6 of 20 Page ID #:8397

Highly Confidential  LMNO Cable Group, Inc. vs.
William W. Klein, Jr.  DISCOVERY COMMUNICATIONS, LLC

1  do you recall having any conversations with anyone
2  at LMNO around this time regarding the issue of
3  international sales or contingent compensation?
4     A    No. I don't have any recollection of a
5  specific conversation about contingent comp with
6  LMNO.
7     Q    As you sit here today, aside from anything
8  that may have been communicated to you by an
9  attorney, do you have any personal knowledge whether
10 the information provided in this document is
11 accurate?
12    A    I have no personal knowledge as to whether
13 or not this information is accurate or not.
14    Q    Do you recall whether you relied on the
15 information sent with this e-mail for any purpose?
16    A    Once again, we've relied on this
17 information presented as fact that this was the
18 current deficit, this was the current revenue gained
19 and costs associated with distribution versus our
20 contingent compensation.
21    Q    At this time, March 2014, what was your
22 understanding regarding the prospect of when you
23 would begin receiving the actual payments on
24 contingent compensation?
25            MR. JOHNSON: If you had one.

Case 2:16-cv-04543-JAK-SK   Document 255-2   Filed 02/26/18   Page 7 of 20   Page ID #:8398

Highly Confidential    LMNO Cable Group, Inc. vs. Discovery Communications, LLC
William W. Klein, Jr.

```
 1              THE WITNESS:  As of the last spreadsheet
 2   that I reviewed, whether it was this one or the one
 3   prior or the one after, sometime in this time frame,
 4   I would say that we were concerned whether or not
 5   this show would move forward based on the fact that
 6   the losses were so great, that -- it was being
 7   presented to us that this was never going to get to
 8   a point where contingent compensation would be
 9   something that we would receive.
10              And we took all of these figures as fact.
11   And so, while we didn't question where the
12   information was derived, it was certainly of
13   concern.
14   BY MR. NELSON:
15       Q    So at around this time, March 2014, would
16   it be fair to say that it was your expectation that
17   you may never receive any contingent compensation in
18   connection with "The Little Couple"?
19       A    Yeah, I would say it's fair that, based on
20   these figures and the number of years that have been
21   in production and exploitation, that it didn't look
22   good for us to be receiving contingent comp in the
23   future.
24            But I'm not a production company, and I
25   can't explain why people would continue to invest
```

Case 2:16-cv-04543-JAK-SK Document 255-2 Filed 02/26/18 Page 8 of 20 Page ID #:8399

Highly Confidential  LMNO Cable Group, Inc. vs.
William W. Klein, Jr.  Discovery Communications, LLC

1  into a show like this without having some
2  expectation of profit in the future.  So maybe those
3  people would know better than me.
4     Q    But despite your expectation that you would
5  likely not receive any future contingent
6  compensation, you continued agreeing to do
7  additional seasons of the show, correct?
8     A    There was no reason for us to believe that
9  we were being told anything other than the truth.
10 And there was a reasonableness that, if our
11 production company and the network were continuing
12 on with the show, that there was some level of
13 profitability to be had, whether short term or long
14 term in the future and that we shared in that as
15 part of our compensation.
16          MR. NELSON:  Want to go off the record.
17          THE VIDEOGRAPHER:  Okay.  Off the record,
18 11:55.
19          (The luncheon recess was taken from
20          11:55 a.m. to 12:49 p.m.)
21          THE VIDEOGRAPHER:  Okay.  We're back on the
22 record now, 12:49 p.m.
23                    - - -
24                EXAMINATION
25                (resumed)

```
 1              (Recess taken from 1:09 p.m.
 2          to 1:11 p.m.)
 3              THE VIDEOGRAPHER:  All right.  We're back
 4  on the record now, 1:11 p.m.
 5  BY MR. NELSON:
 6       Q    In what ways would you place your trust in
 7  LMNO?
 8       A    Well, at the onset of our relationship, I
 9  think Jennifer and I were both skeptical about doing
10  a television show that focused on our daily lives.
11              And so we started off that relationship
12  with a position that we would allow LMNO in and the
13  cameras into our lives, but we were expecting to
14  have them earn our trust.
15              And over time that trust developed into a
16  relationship from which most of the things that we
17  did on a daily basis went without question.  Of
18  course, there's some skepticism to, you know,
19  working with any business because, at the end of the
20  day, it's a business.
21              And, you know, we were careful to use our
22  better judgment at all times.  But, by and large, we
23  had a relationship.  We sent Christmas cards and --
24  you know, and actually meant it when we sent them,
25  as opposed to most people.
```

Case 2:16-cv-04543-JAK-SK Document 255-2 Filed 02/26/18 Page 10 of 20 Page ID #:8401

Highly Confidential   LMNO Cable Group, Inc. vs.
William W. Klein, Jr.   Discovery Communications, LLC

1          I think there was a relationship there.
2    And I think it was the foundation under which we
3    didn't question the numbers, the details of the
4    things that were going on because we were the ones
5    that had less experience in this industry. We were
6    working with a company that's been around for
7    decades. This is our one and only show.
8          So that's the crux of our relationship and
9    where that trust lies.
10    Q    All right. And while LMNO was filming the
11   show, did you trust LMNO to maintain confidential
12   certain information regarding your family?
13    A    Of course.
14    Q    And you trusted them to maintain
15   confidences regarding medical situations?
16    A    Yes.
17    Q    During your time working with LMNO prior to
18   these issues arising, did you ever believe that LMNO
19   had betrayed your trust?
20    A    There were instances that I was concerned
21   that they overstepped bounds or that an individual
22   that was working for them, you know, didn't pay
23   attention to what we had requested.
24         I don't know if it would go so far as to be
25   a betrayal of trust, but it certainly questioned

Highly Confidential — LMNO Cable Group, Inc. vs. Discovery Communications, LLC
William W. Klein, Jr.

```
 1   honest people, correct?
 2       A    Correct.
 3       Q    Do you understand that you've now alleged a
 4   claim for fraud against Eric Schotz as an
 5   individual?
 6       A    I do.
 7       Q    All right.  Can you tell me every
 8   misrepresentation that you believe was made to you
 9   by Eric Schotz?
10       A    I believe that the information that was
11   provided to us from his company, which he's the
12   owner of, that he's the officer of, that he conveyed
13   as being the individual that makes all the
14   decisions, was providing us with information that
15   ultimately resulted in contingent compensation being
16   zero forever.
17            And then we were communicated with that
18   that information might not be accurate.  And if we
19   were trusting on that relationship for an extended
20   period of time without question because of our trust
21   in other areas of our relationship, it was a
22   betrayal, in our opinion.
23            But it was clearly something that we were
24   misled if the numbers are incorrect and we were
25   presented with numbers that we're supposed to have
```

Case 2:16-cv-04543-JAK-SK Document 255-2 Filed 02/26/18 Page 12 of 20 Page ID #:8403

Highly Confidential     LMNO Cable Group, Inc. vs.
William W. Klein, Jr.     Discovery Communications, LLC

1   confidence in.

2   Q   And I just want to get very specific here
3   because you --

4   A   Please.

5   Q   -- you are a businessman.

6   You understand that an entity can't act for
7   itself, correct? It acts through individuals,
8   right?

9   A   Sure.

10   Q   And so what I'm -- I understand you've
11   alleged claims against LMNO. And what I'm trying to
12   get at is what any specific individuals did.

13   And so I understand your answer regarding
14   Eric Schotz being responsible for LMNO. But my
15   question for you specifically is Eric Schotz
16   individually.

17   Can you tell me any misrepresentation that
18   Eric Schotz communicated to you individually?

19   A   I would say that the relationship that I
20   had with Eric personally was one where -- the
21   feeling that we were provided, through a personal
22   relationship, like being invited to stay at his home
23   in Newport Beach while Jennifer was taking an exam
24   was -- if these numbers are all incorrect,
25   potentially a manipulation of our personal

Case 2:16-cv-04543-JAK-SK   Document 255-2   Filed 02/26/18   Page 13 of 20   Page ID #:8404

Highly Confidential                LMNO Cable Group, Inc. vs.
William W. Klein, Jr.              Discovery Communications, LLC

1    Q    Do you know whether Mr. Horwitz has any
2    ownership interest in LMNO?
3    A    I do not know.
4    Q    Do you know whether Mr. Horwitz is a
5    salaried employee at LMNO?
6    A    I do not know.
7         MS. ALEXANDER:  No further questions.
8         MR. JOHNSON:  Okay.  I'm going to sit where
9    you're sitting.
10        MR. NELSON:  I'm going to tell them to come
11   back in unless you --
12        MR. JOHNSON:  Okay.
13        (Ms. Schotz and Mr. Horwitz entered the
14        conference room.)
15                         - - -
16                      EXAMINATION
17   BY MR. JOHNSON:
18   Q    As a result of the conduct of Mr. Schotz,
19   LMNO, and Mr. Horwitz, have you felt anger?
20        MR. NELSON:  Objection.  Vague, leading.
21        THE WITNESS:  Yes.
22   BY MR. JOHNSON:
23   Q    Can you describe the nature of the anger?
24   A    For a number of years, we developed a
25   relationship based on trust with Eric, Ed, Ruth, the

Highly Confidential                     LMNO Cable Group, Inc. vs.
William W. Klein, Jr.                   Discovery Communications, LLC

1   team at LMNO.  We shared with them some of the most
2   intimate moments in our lives.  And since then
3   things have derailed.
4              That basis of trust is kind of questioned
5   at this point.  What was the foundation of that
6   relationship?  Was it to get what they wanted or to
7   actually have a trusting relationship?
8       Q    So are you saying that the breach of trust
9   you just referenced is a -- another issue
10  emotionally for you?
11             (Mr. Schotz entered the conference
12             room.)
13             MS. ALEXANDER:  Objection.
14             MR. NELSON:  Obj- --
15             MS. ALEXANDER:  Leading.
16             MR. NELSON:  Join.
17  BY MR. JOHNSON:
18      Q    I'll ask it in a totally nonleading way.
19             Yes or no:  Is the breach of trust -- is
20  breach of trust an issue for you with respect to
21  Mr. Horwitz, Mr. Schotz, and LMNO?
22             MR. NELSON:  Objection.  Still leading.
23             MR. JOHNSON:  That cannot be leading if you
24  say "yes or no."
25  ///

Page 172

Highly Confidential  
William W. Klein, Jr.  
LMNO Cable Group, Inc. vs. Discovery Communications, LLC

```
 1   BY MR. JOHNSON:
 2       Q    So what is it?
 3            MR. NELSON:  You don't think?  Oh, okay.
 4            MR. JOHNSON:  No, it cannot.
 5            MR. NELSON:  All right.  So I made my
 6   objection.
 7            MR. JOHNSON:  Go ahead.
 8            THE WITNESS:  Yes.
 9   BY MR. JOHNSON:
10       Q    And explain -- has that breach of trust
11   infected or affected other trust -- other situations
12   where trust is necessary?
13       A    Well --
14            MS. ALEXANDER:  Objection.  Vague, leading.
15            THE WITNESS:  As a result of what has
16   seemingly occurred over the past year and a half,
17   we've had to migrate our production company or
18   production team to a new organization.
19            And a lot of the things that have made our
20   program successful is the ability to trust people.
21   That trust being betrayed is not easily won again.
22   And in an industry like television and film, and
23   reality television in particular, it's the
24   foundation for what we were able to agree to.
25            I don't know if we'll ever be able to trust
```

Page 173

Case 2:16-cv-04543-JAK-SK Document 255-2 Filed 02/26/18 Page 16 of 20 Page ID #:8407

Highly Confidential    LMNO Cable Group, Inc. vs.
William W. Klein, Jr.    Discovery Communications, LLC

```
 1   someone like that again.
 2   BY MR. JOHNSON:
 3       Q    And I -- did you trust -- or did you put
 4   LMNO, Mr. Horwitz, and Mr. Schotz in the position of
 5   learning the most intimate details of your life and
 6   family?
 7       A    Yes.
 8            MR. NELSON:  Objection.  Vague, leading.
 9   BY MR. JOHNSON:
10       Q    Have you been confused as to how and why
11   this happened?
12            MR. NELSON:  Objection.  Vague.
13   BY MR. JOHNSON:
14       Q    And when I say, "How and why this
15   happened," I mean the alleged swindling out of you
16   of hundreds of thousands, if not over a million
17   dollars?
18            MR. NELSON:  Objection.
19            MS. ALEXANDER:  Objection.  Argumentative.
20   BY MR. JOHNSON:
21       Q    Has that been confusing?
22            MR. NELSON:  Vague, leading, and now
23   argumentative.
24            THE WITNESS:  Yes, it's been a very
25   confusing time.  To be the most inexperienced out of
```

Case 2:16-cv-04543-JAK-SK Document 255-2 Filed 02/26/18 Page 17 of 20 Page ID #:8408

Highly Confidential  LMNO Cable Group, Inc. vs.
William W. Klein, Jr.  Discovery Communications, LLC

1  the trio of participants in what is now a show
2  that's been going on for ten years, we relied on
3  LMNO as the experts to teach us what we should be
4  doing and what we should expect.
5  BY MR. JOHNSON:
6      Q    If you were to learn now that Mr. Horwitz
7  had no idea as to whether or not the figures were
8  accurate that he gave you over these many years of
9  period as to the monies, would that surprise you?
10          MS. ALEXANDER:  Objection.  Argumentative.
11          MR. NELSON:  Compound, leading.
12          THE WITNESS:  That would surprise me.
13  BY MR. JOHNSON:
14      Q    Was he the primary liaison that you had at
15  LMNO for providing you with information about your
16  finances?
17          MR. NELSON:  Objection.  Leading, vague.
18          THE WITNESS:  Yes.
19  BY MR. JOHNSON:
20      Q    If, assuming you have been swindled out of
21  hundreds of thousands or well into seven figures,
22  would you enter into deals with LMNO again?
23          MR. NELSON:  Objection.  Argumentative.
24          MR. JOHNSON:  Or would -- withdraw the
25  question.

Case 2:16-cv-04543-JAK-SK   Document 255-2   Filed 02/26/18   Page 18 of 20   Page ID #:8409

Highly Confidential

William W. Klein, Jr.

LMNO Cable Group, Inc. vs. Discovery Communications, LLC

```
 1  BY MR. JOHNSON:
 2       Q    Would you enter into the -- knowing what
 3  you know now -- let's try it one more time.
 4            Assuming that, when you were entering into
 5  any of the deals with LMNO, you had been advised,
 6  "We will be swindling you in this situation.  We
 7  will not be accounting to you properly," would you
 8  have entered into the deal?
 9            MR. NELSON:  Objection.  Vague.
10            MS. ALEXANDER:  Objection.
11            MR. NELSON:  Leading, argumentative.
12            MS. ALEXANDER:  Calls for speculation,
13  improper hypothetical.
14            THE WITNESS:  No.
15            MR. JOHNSON:  I don't have anything else.
16  Are we done?
17            MR. NELSON:  I'm done.
18            MS. ALEXANDER:  Can we take a break?
19            THE VIDEOGRAPHER:  Okay.  Then we'll go off
20  the record now at 3:39.
21            (Recess taken from 3:39 p.m.
22       to 3:42 p.m.)
23            MR. JOHNSON:  We'll go on the record.
24            The transcript of this will be sent to me.
25  I will have 30 days after my receipt to advise
```

```
 1              CERTIFICATE OF CERTIFIED SHORTHAND REPORTER
 2
 3              I, Marla Sharp, certified shorthand
 4   reporter in the State of California, hereby certify:
 5              That the foregoing videotaped deposition
 6   of WILLIAM W. KLEIN, JR., was taken before me on
 7   January 12, 2018, at which time the witness was duly
 8   sworn by me;
 9              That the testimony of the witness and all
10   colloquy and objections made at the time of the
11   deposition were recorded stenographically by me and
12   thereafter transcribed, said transcript being a true
13   copy of my shorthand notes thereof;
14              That review of the transcript (X) was
15   ( ) was not requested before completion of the
16   deposition; ( ) that the witness has failed or
17   refused to approve the transcript.
18              I further certify I am neither financially
19   interested in the action nor a relative or employee
20   of any attorney of any of the parties.
21              In witness whereof, I have subscribed my
22   name and signature this date, January 23, 2018.
23
24                              _____
                                Marla Sharp
25                              RPR, CLR, CCRR, CSR No. 11924
```

Highly Confidential

William W. Klein, Jr.    LMNO Cable Group, Inc. vs. Discovery Communications, LLC

1  DECLARATION UNDER PENALTY OF PERJURY

2  Case Name: LMNO Cable Group, Inc. vs. Discovery Communications, LLC

3  Date of Deposition: 01/12/2018

4  Job No.: 10039173

5

6       I, WILLIAM W. KLEIN, JR., hereby certify

7  under penalty of perjury under the laws of the State of

8  _____ that the foregoing is true and correct.

9       Executed this _____ day of

10 _____, 2018, at _____.

11

12

13                              _____

14                              WILLIAM W. KLEIN, JR.

15

16 NOTARIZATION (If Required)

17 State of _____

18 County of _____

19 Subscribed and sworn to (or affirmed) before me on

20 this _____ day of _____, 20__,

21 by_____, proved to me on the

22 basis of satisfactory evidence to be the person

23 who appeared before me.

24 Signature: _____ (Seal)

25