Neville L. Johnson (SBN 66329)
Arun Dayalan (SBN 225255)
Alec R. Govi (SBN 313243)
**JOHNSON & JOHNSON LLP**
439 North Canon Drive, Suite 200
Beverly Hills, California 90210
Telephone: (310) 975-1080
Facsimile: (310) 975-1095
Email: njohnson@jjllplaw.com
adayalan@jjllplaw.com
agovi@jjllplaw.com

*Attorneys for Plaintiff-Intervenors*
William Klein, Jennifer Arnold, and Candu Enterprises, Inc.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LMNO CABLE GROUP, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>DISCOVERY COMMUNICATIONS, LLC, a Delaware limited liability company,<br><br>Defendants.<br><br>DISCOVERY COMMUNICATIONS, LLC, a Delaware limited liability company,<br>Counterclaim Plaintiff,<br><br>v.<br><br>LMNO CABLE GROUP, INC., a California corporation, LMNO ENTERTAINMENT GROUP, LLC, a California limited liability company,<br><br>Counterclaim Defendants. | CASE NO.: 2:16-cv-4543-JAK-SK<br><br>**DECLARATION OF WILLIAM KLEIN IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS LMNO AND ERIC SHOTZ' MOTION FOR SUMMARY JUDGMENT**<br><br>Date: April 2, 2018<br>Time: 8:30 A.M.<br>Crtrm.: 10B<br><br>Hon. John A. Kronstadt |

**DECLARATION OF WILLIAM KLEIN**

| | |
|---|---|
| WILLIAM KLEIN, an individual; JENNIFER ARNOLD, an individual; and CANDU ENTERPRISES, INC., a Texas corporation;<br><br>        Plaintiff-Intervenors,<br><br>        v.<br><br>LMNO CABLE GROUP, INC., a California corporation; ERIC SCHOTZ, an individual; and EDWARD HORWITZ, an individual,<br><br>        Defendants. | |

**DECLARATION OF WILLIAM KLEIN**

# DECLARATION OF WILLIAM KLEIN

I, William Klein, declare as follows:

1. I am a Plaintiff in this lawsuit. I have personal knowledge of the following facts. If asked to testify as to the facts stated herein, I could and would competently do so.

2. I occupy management positions in a variety of different businesses. For the past nine years, I have been one of the stars of *The Little Couple*, a reality television series ("the Program"), soon to begin its tenth season on the TLC Network. I am married to Plaintiff Jennifer Klein. Plaintiff Candu Enterprises Inc. ("Candu") is our loan-out corporation. I refer herein to my wife, Candu and me as "Plaintiffs."

3. Plaintiffs entered into the Option Agreement with LMNO Cable Group, Inc. ("LMNO") in or about October 2008 to produce the Program which was based on our lives. At that time, we relied on LMNO's truth and honesty to account for all money due to us as contingent compensation under the Option Agreement. We were never in a position of knowledge to know whether the numbers Defendants were giving us were truthful information or not.

4. In or about 2010, as we had not received any profit participation statements from LMNO, we had our transactional attorney Roger Armstrong inquire as to the status of the statements. Edward Horowitz, who was our main liaison with LMNO, provided many excuses as to the delay of the statements. When we did receive statements from Horwitz, Schotz and LMNO, they always showed that the Program was running a large producer's deficit with no contingent compensation owed to us. These statements dated to the beginning the Program.

5. The Program is based on my family's lives. My wife and I have had significant input and contribution as to the content of the show as well as its overall direction. I would write a bullet point summary of each episode of the season. I

1
**DECLARATION OF WILLIAM KLEIN**

would also write the short story arc and long story arc for each season. I also wrote the far majority of all cliffhangers, activities, etc. All matters dealing with my wife at the hospital in her capacity as a medical doctor were all written and created by her as the hospital had strict rules regarding filming at the hospital. Plaintiffs decided what would and would not get filmed. 90% of the content was created by Plaintiffs. The trip to London was entirely created by Plaintiffs. The adoption of our children in China and India were based on our lives and the content was created by Plaintiffs.

6. In or about June 2014, Plaintiffs signed the Surviving Agreement with LMNO wherein in addition to the 25% of 100% of Producer's share of any contingent compensation, we were also to receive 25% of 100% of Producer's "Net Proceeds" in the event that LMNO exploited the Program directly. As part of this deal, it was understood by Plaintiffs that they were to receive 25% of any deals that LMNO made regarding the licensing of the Program, including all compensation received by LMNO from Cineflix. LMNO acknowledged this fact by including all compensation it received from LMNO in its profit and cost statements it provided to us.

7. At the time of signing the Surviving Agreement or any of the prior agreements and/or amendments, Plaintiffs had no knowledge of the fraud being committed by Defendants.

8. In or about December 2015, Paul Ikegami ("Ikegami") contacted us through our attorney Roger Armstrong and stated that LMNO had committed certain accounting irregularities. Plaintiffs were contacted by Discovery Communications a few months later and stated to us that it also was contacted by Ikegami. Roger Armstrong tried to get a statement from Ikegami, but that never materialized. Discovery asked Plaintiffs to let them investigate the matter to determine if there was actual fraud by LMNO occurring.

9. In December 2016, Candu was served with a document subpoena seeking all royalty statements received from LMNO, as well as all communications with LMNO relating to those royalty statements, in *LMNO Cable Group, Inc. v. Discovery Communications, LLC*. It was at this time that Plaintiffs realized that the fraud allegations against LMNO were real. Before that time, we did not have any suitable proof that LMNO had committed fraud.

10. As a result of Schotz, Horwitz and LMNO's fraud we have had significant out-of-pocket loss, mostly in the form of attorney fees for our transactional attorney Roger Armstrong. Mr. Armstrong had to contact Defendants several times to get profit participation statements and he had to hound them to get these statements which cost Plaintiffs considerable money.

11. As a result of Defendants falsely stating to me that there was a large producer deficit for the entirety of the Program, it affected Plaintiffs' bargaining power in getting better deals regarding our episodic fee as well as contingent compensation. Horwitz and Schotz, however, consistently told us that our show was running a large deficit and that we were fortunate that the Program was still being made.

12. Schotz and Horwitz lied to us consistently about the large producer deficit that the Program was running. These lies greatly affected my wife and me emotionally. We have had a hard time trusting anyone in this industry as a result.

13. When LMNO, Schotz and Horwitz did provide accounting statements to Plaintiffs, they always showed a large producer deficit that supposedly existed since the inception of the Program.

14. I believe that Defendants intended to defraud Plaintiffs from the very beginning of our Agreement in 2008. We relied on the statements by Schotz and Horwitz as to the accounting of the Program and did not request an accounting as a

3
**DECLARATION OF WILLIAM KLEIN**

result.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in _____St. Petersburg, Florida_____ on February 26, 2018.

*/s/ William Klein*
William Klein

4
**DECLARATION OF WILLIAM KLEIN**