Neville L. Johnson (SBN 66329)
Arun Dayalan (SBN 225255)
Alec R. Govi (SBN 313243)
**JOHNSON & JOHNSON LLP**
439 North Canon Drive, Suite 200
Beverly Hills, California 90210
Telephone: (310) 975-1080
Facsimile: (310) 975-1095
Email:     njohnson@jjllplaw.com
           adayalan@jjllplaw.com
           agovi@jjllplaw.com

*Attorneys for Plaintiff-Intervenors*
William Klein, Jennifer Arnold, and Candu
Enterprises, Inc.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LMNO CABLE GROUP, INC., a California corporation,<br><br>        Plaintiff,<br><br>        v.<br><br>DISCOVERY COMMUNICATIONS, LLC, a Delaware limited liability company,<br><br>        Defendants.<br>━━━━━━━━━━━━━━━━━━<br>DISCOVERY COMMUNICATIONS, LLC, a Delaware limited liability company,<br>        Counterclaim Plaintiff,<br><br>        v.<br><br>LMNO CABLE GROUP, INC., a California corporation, LMNO ENTERTAINMENT GROUP, LLC, a California limited liability company,<br><br>        Counterclaim Defendants.<br>━━━━━━━━━━━━━━━━━━ | CASE NO.: 2:16-cv-4543-JAK-SK<br><br>**STATEMENT OF GENUINE DISPUTED FACTS IN SUPPORT OF PLAINTIFFS WILLIAM KLEIN, JENNIFER ARNOLD AND CANDU ENTERPRISES, INC,'S OPPOSITION TO DEFENDANTS ERIC SHOTZ AND LMNO CABLE GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:    April 2, 2018<br>Time:   8:30 A.M.<br>Crtrm.: 10B<br><br>Hon. John A. Kronstadt |

1   WILLIAM KLEIN, an individual;
    JENNIFER ARNOLD, an individual; and
2   CANDU ENTERPRISES, INC., a Texas
    corporation;
3
                          Plaintiff-Intervenors,
4
                          v.
5
    LMNO CABLE GROUP, INC., a
6   California corporation; ERIC SCHOTZ, an
    individual; and EDWARD HORWITZ, an
7   individual,
8                         Defendants.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFFS' STATEMENT OF GENUINE DISPUTED FACTS IN SUPPORT OF THEIR
OPPOSITION TO DEFENDANTS ERIC SHOTZ AND LMNO CABLE GROUP, INC.'S
MOTION FOR SUMMARY JUDGMENT**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

Plaintiff-Intervenors William Klein, Jennifer Arnold and Candu Enterprises ("Plaintiffs") respectfully submit the following Statement of Genuine Disputed Facts pursuant to Federal Rule of Civil Procedure 56, Local Rule 56-1 and Local Rule 7-9, together with references to supporting evidence, in response to Defendants Eric Schotz and LMNO Cable Group, Inc.'s (collectively, "Defendants") Statement of Uncontroverted Facts and Conclusions of Law, together with references to supporting evidence, in support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment and Partial Summary Judgment.

**ISSUE 1: An Order should be entered adjudicating Plaintiff-Intervenors' claim in favor of LMNO and Schotz because it is barred by the economic loss rule.**

|  |  | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence |
|---|---|---|---|
|  | 1. | LMNO Cable Group, Inc. ("LMNO") is a television production company.<br><br>Declaration of David W. Nelson ("Nelson Decl."), Ex. A [Plaintiff-Intervenors' First Amended Complaint], ¶ 26. | Undisputed. |
|  | 2. | Eric Schotz is the President and Chief Executive Officer of LMNO.<br><br>Ex. A, ¶ 27. | Undisputed. |
|  | 3. | LMNO was the producer of *The Little Couple* television series.<br><br>Nelson Decl., Ex. A, ¶ 3. | Undisputed that LMNO held this title. Disputed to the extent that they contributed wholly and/or fixed the production of |

**PLAINTIFFS' STATEMENT OF GENUINE DISPUTED FACTS IN SUPPORT OF THEIR OPPOSITION TO DEFENDANTS ERIC SHOTZ AND LMNO CABLE GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT**

| | | | |
|---|---|---|---|
| | | | The Little. Couple.<br><br>Decl. of William Klein. ¶  . |
| 4. | Plaintiff-Intervenors William Klein and Jennifer Arnold are the on-screen stars of *The Little Couple.*<br><br>Nelson Decl., Ex. A, ¶¶ 23-24. | | Undisputed. |
| 5. | Plaintiff-Intervenor Candu Enterprises, Inc. ("Candu") is a loan-out corporation which provides the services of William Klein and Jennifer Arnold in connection with, *inter alia*, the production of *The Little Couple.*<br><br>Nelson Decl., Ex. A, ¶ 25. | | Undisputed. |
| 6. | On or about October 28, 2008, William Klein and Jennifer Arnold, on the one hand, and LMNO, on the other hand, entered into an agreement entitled the "Option Agreement."<br><br>Nelson Decl., Ex. A, ¶ 42; Nelson Decl., Ex. F [Option Agreement]; Nelson Decl., Ex. B [Klein Depo.], 19:25-20:19. | | Undisputed. |
| 7. | Under the Option Agreement, LMNO was granted an exclusive option to produce a television series based on the daily lives of William Klein and Jennifer Arnold.<br><br>Nelson Decl., Ex. F, ¶ 1; Nelson Decl., Ex. B, 19:25-20:19. | | Undisputed. |
| 8. | The Option Agreement provided that William Klein and Jennifer Arnold would receive an upfront | | Undisputed. |

| | | | |
|---|---|---|---|
| | | fee for each original episode of *The Little Couple*.<br><br>Nelson Decl., Ex. A, ¶ 42. | |
| | 9. | The Option Agreement provided that William Klein and Jennifer Arnold would be entitled to "Twenty-Five percent [25%] of One Hundred Percent [100%] of LMNO's share of any contingent compensation received by LMNO from the exploitation of the Property by third parties (e.g. all media including television, DVD's merchandise, domestic and foreign), after LMNO first receives any un-recouped, direct, out of pocket third party customary development, production, and distribution costs."<br><br>Nelson Decl., Ex. A, ¶ 42; Nelson Decl., Ex. F, ¶ 3; Nelson Decl., Ex. B, 19:25-20:19. | Undisputed. |
| | 10. | The Option Agreement provided that "Artist shall receive written accountings [including Network accounting statements] from LMNO along with any contingent compensation payments due within a period of ninety [90] days from LMNO's receipt of any written accountings and contingent compensation payments due from the applicable Network and/or distributor."<br><br>Nelson Decl., Ex. F, ¶ 3; Nelson Decl., Ex. B, 19:25-20:19. | Undisputed. |
| | 11. | The Option Agreement was amended by (1) an Amendment | Undisputed. |

3

| | | | |
|---|---|---|---|
| | | dated July 20, 2009, (2) a Second Amendment to Option Agreement dated November 1, 2010, and (3) Amendment 3 to Option Agreement dated November 1, 2011 (the "Amended Option Agreement").<br><br>Nelson Decl., Ex. G [Surviving Agreement], Recital A; Nelson Decl., Ex. B, 33:17-34:9. | |
| | 12. | In or around June 2014, LMNO assigned the Amended Option Agreement, in its entirety, to Discovery Communications, LLC.<br><br>Nelson Decl., Ex. G, Recital B; Nelson Decl., Ex. B, 33:17-34:9; Nelson Decl., Ex. A, ¶ 47. | Undisputed. |
| | 13. | In or around June 2014, LMNO and Candu entered into a "surviving" agreement (the "Surviving Agreement").<br><br>Nelson Decl., Ex. A, ¶ 48; Nelson Decl., Ex. G; Nelson Decl., Ex. B, 33:17-34:9. | Undisputed. |
| | 14. | The Surviving Agreement provided that "Artist shall be entitled to receive 25% of 100% of Producer's share of any contingent compensation received by Producer from the exploitation of the Property by third parties (e.g. all media including television, DVDs, merchandise, publishing, domestic and foreign), after Producer first recoups any un-recouped direct, out of pocket third party customary development, production, and | Disputed to the extent that the Agreement clearly states that Plaintiffs are entitled to 25% of 100% of LMNO's share of direct exploitation by LMNO of the Program, which includes licensing of the Program to Cineflix.<br><br>Klein Decl. ¶  . |

| | | | |
|---|---|---|---|
| | | distribution costs." | |
| | | Nelson Decl., Ex. A, ¶ 48; Nelson Decl., Ex. G, ¶ 3; Nelson Decl., Ex. B, 33:17-34:9. | |
| | 15. | The Surviving Agreement provided that "Artist shall be entitled to receive reasonably detailed, written accountings (including copies of any and all network and other third party accounting statements received by Producer) from Producer along with any and all contingent compensation payments (including, without limitation, Net Proceeds and Net Merchandise Receipts) due within a period of ninety (90) days from Producer's receipt of any written accountings and contingent compensation payments due from the applicable network and/or distributor."

Nelson Decl., Ex. A, ¶ 48; Nelson Decl., Ex. G, ¶ 3; Nelson Decl., Ex. B, 33:17-34:9. | Undisputed. |
| | 16. | Plaintiff-Intervenors have alleged that LMNO breached its contractual obligations under the Amended Option Agreement and Surviving Agreement by "underreporting of revenues owed to Plaintiffs as their portion of LMNO's contingent compensation" and "fail[ing] to pay amounts actually owed to Plaintiff as Plaintiffs' portion of LMNO's contingent compensation." | Undisputed. |

5

| | | Nelson Decl., Ex. A, ¶¶ 76-77. | |
|---|---|---|---|
| | 17. | Plaintiff-Intervenors' fraud claim is based solely on alleged misrepresentations made in accounting statements provided to Plaintiff-Intervenors under either the Amended Option Agreement or Surviving Agreement, or alleged statements regarding the amount of compensation owed to Plaintiff-Intervenors' under the Amended Option Agreement and/or Surviving Agreement.<br><br>Nelson Decl., Ex. H [Plaintiff-Intervenors Interrogatory Responses], Response to Interrogatory No. 1. | Disputed in part. Plaintiffs' fraud claim is also predicated on the oral misrepresentations made by LMNO officers Eric Shotz and Ed Horowitz.<br><br>Decl. of William Klein, ¶  . |
| | 18. | Plaintiff-Intervenors' only alleged reliance on any misrepresentation purportedly made by LMNO or Schotz was continuing to fulfill their obligations under the Amended Option Agreement and Surviving Agreement and desisting from exercising their contractual right to audit the program.<br><br>Nelson Decl., Ex. H, Response to Interrogatories No. 2 and 3. | Disputed in part. Plaintiff's also relied on these statements by not having the correct bargaining power to negotiate compensation subsequent to the 2008 Option Agreement.<br><br>Decl. of William Klein, ¶  . |
| | 19. | Plaintiff-Intervenors have not identified any actual damages that they have suffered as a result of LMNO and Schotz's alleged fraud other than the damages purportedly arising from LMNO's alleged breach of the Amended Option Agreement and Surviving Agreement.<br><br>Nelson Decl., Ex. H, Response to | Disputed. Plaintiffs have suffered out-of-pocket damages in the form of attorney's fee for their contractual attorney Roger Armstrong; emotional damages stemming from the rampant and pervasive fraud committed by the Defendants.<br><br>Dayalan Decl., Ex.  . Klein Decl., Ex. |

6

| | Interrogatories 12-13; Nelson Decl., Ex. I [Plaintiff-Intervenors' Damage Expert Report]. | |
|---|---|---|

**ISSUE 2: An Order should be entered adjudicating Plaintiff-Intervenors' conversion claim in favor of LMNO and Schotz because it is barred by the economic loss rule.**

| | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence |
|---|---|---|
| 20. | LMNO is a television production company.<br><br>Nelson Decl., Ex. A, ¶ 26. | Undisputed. |
| 21. | Eric Schotz is the President and Chief Executive Officer of LMNO.<br><br>Ex. A, ¶ 27. | Undisputed. |
| 22. | LMNO was the producer of *The Little Couple* television series.<br><br>Nelson Decl., Ex. A, ¶ 3. | Undisputed that LMNO held this title. Disputed to the extent that they contributed wholly and/or fixed the production of The Little. Couple.<br><br>Decl. of William Klein. ¶ . |
| 23. | Plaintiff-Intervenors William Klein and Jennifer Arnold are the on-screen stars of *The Little Couple.*<br><br>Nelson Decl., Ex. A, ¶¶ 23-24. | Undisputed. |
| 24. | Candu is a loan-out corporation which provides the services of William Klein and Jennifer Arnold in connection with, *inter alia*, the production of *The Little Couple* | Undisputed. |

7

Case 2:16-cv-04543-JAK-SK   Document 255-9   Filed 02/26/18   Page 10 of 33   Page ID
#:8499

| | | | |
|---|---|---|---|
| | | Nelson Decl., Ex. A, ¶ 25. | |
| | 25. | On or about October 28, 2008, William Klein and Jennifer Arnold, on the one hand, and LMNO, on the other hand, entered into an agreement entitled the "Option Agreement." Nelson Decl., Ex. A, ¶ 42; Nelson Decl., Ex. F [Option Agreement]; Nelson Decl., Ex. B [Klein Depo.], 19:25-20:19. | Undisputed. |
| | 26. | Under the Option Agreement, LMNO was granted an exclusive option to produce a television series based on the daily lives of William Klein and Jennifer Arnold. Nelson Decl., Ex. F, ¶ 1; Nelson Decl., Ex. B, 19:25-20:19. | Undisputed. |
| | 27. | The Option Agreement provided that William Klein and Jennifer Arnold would receive an upfront fee for each original episode of *The Little Couple* that was produced. Nelson Decl., Ex. A, ¶ 42. | Undisputed. |
| | 28. | The Option Agreement provided that William Klein and Jennifer Arnold would be entitled to "Twenty-Five percent [25%] of One Hundred Percent [100%] of LMNO's share of any contingent compensation received by LMNO from the exploitation of the Property by third parties (e.g. all media including television, DVD's merchandise, domestic | Undisputed. |

8

**PLAINTIFFS' STATEMENT OF GENUINE DISPUTED FACTS IN SUPPORT OF THEIR OPPOSITION TO DEFENDANTS ERIC SHOTZ AND LMNO CABLE GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT**

| | | | |
|---|---|---|---|
| | | and foreign), after LMNO first receives any un-recouped, direct, out of pocket third party customary development, production, and distribution costs." Nelson Decl., Ex. A, ¶ 42; Nelson Decl., Ex. F, ¶ 3; Nelson Decl., Ex. B, 19:25-20:19. | |
| | 29. | The Option Agreement provided that "Artist shall receive written accountings [including Network accounting statements] from LMNO along with any contingent compensation payments due within a period of ninety [90] days from LMNO's receipt of any written accountings and contingent compensation payments due from the applicable Network and/or distributor." Nelson Decl., Ex. F, ¶ 3; Nelson Decl., Ex. B, 19:25-20:19. | Undisputed. |
| | 30. | The Option Agreement was amended by (1) an Amendment dated July 20, 2009, (2) a Second Amendment to Option Agreement dated November 1, 2010, and (3) Amendment 3 to Option Agreement dated November 1, 2011 (the "Amended Option Agreement"). Nelson Decl., Ex. G [Surviving Agreement], Recital A; Nelson Decl., Ex. B, 33:17-34:9. | Undisputed. |
| | 31. | In or around June 2014, LMNO assigned the Amended Option Agreement, in its entirety, to | Undisputed. |

9

| | | | |
|---|---|---|---|
| | | Discovery Communications, LLC.<br><br>Nelson Decl., Ex. G, Recital B; Nelson Decl., Ex. B, 33:17-34:9; Nelson Decl., Ex. A, ¶ 47. | |
| | 32. | In or around June 2014, LMNO and Candu entered into the Surviving Agreement.<br><br>Nelson Decl., Ex. A, ¶ 48; Nelson Decl., Ex. G; Nelson Decl., Ex. B, 33:17-34:9. | Undisputed. |
| | 33. | The Surviving Agreement provided that "Artist shall be entitled to receive 25% of 100% of Producer's share of any contingent compensation received by Producer from the exploitation of the Property by third parties (e.g. all media including television, DVDs, merchandise, publishing, domestic and foreign), after Producer first recoups any un-recouped direct, out of pocket third party customary development, production, and distribution costs."<br><br>Nelson Decl., Ex. A, ¶ 48; Nelson Decl., Ex. G, ¶ 3; Nelson Decl., Ex. B, 33:17-34:9. | Undisputed. |
| | 34. | The Surviving Agreement provided that "Artist shall be entitled to receive reasonably detailed, written accountings (including copies of any and all network and other third party accounting statements received by Producer) from Producer along with any and all contingent compensation payments | Undisputed. |

10

| | | | |
|---|---|---|---|
| 1 2 3 4 5 6 7 8 | | (including, without limitation, Net Proceeds and Net Merchandise Receipts) due within a period of ninety (90) days from Producer's receipt of any written accountings and contingent compensation payments due from the applicable network and/or distributor."<br><br>Nelson Decl., Ex. A, ¶ 48; Nelson Decl., Ex. G, ¶ 3; Nelson Decl., Ex. B, 33:17-34:9. | |
| 9 10 11 12 13 14 15 16 17 18 | 35. | Plaintiff-Intervenors have alleged that LMNO breached its contractual obligations under the Amended Option Agreement and Surviving Agreement by "underreporting of revenues owed to Plaintiffs as their portion of LMNO's contingent compensation" and "fail[ing] to pay amounts actually owed to Plaintiff as Plaintiffs' portion of LMNO's contingent compensation."<br><br>Nelson Decl., Ex. A, ¶¶ 76-77. | Undisputed. |
| 19 20 21 22 23 24 25 | 36. | Plaintiff-Intervenors' alleged conversion is based solely on the allegation that LMNO and/or Schotz has interfered with money that Plaintiff-Intervenors allegedly should have been paid under the Amended Option Agreement or Surviving Agreement.<br><br>Nelson Decl., Ex. A, ¶ 122-126. | Disputed in part. Plaintiffs also claim that they have an equitable lien, as set forth in their Opposition to the Motion for Summary Judgment. |
| 26 27 28 | 37. | Plaintiff-Intervenors have not identified any actual damages that they have suffered as a result of LMNO and Schotz's alleged | Disputed in part. Plaintiffs also claim that they have an equitable lien, as set forth in their Opposition to the Motion |

11

| | | | for Summary Judgment. |
|---|---|---|---|
| | | conversion other than the damages purportedly arising from LMNO's alleged breach of the Amended Option Agreement and Surviving Agreement.<br><br>Nelson Decl., Ex. H, Response to Interrogatories 12-13; Nelson Decl., Ex.<br>I [Plaintiff-Intervenors' Damage Expert Report]. | |

**ISSUE 3: An Order should be entered adjudicating Plaintiff-Intervenors'
claim for conversion in favor of LMNO and Schotz because Plaintiff-
Intervenors cannot establish that they had an ownership interest in any
property that was converted.**

| | | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence |
|---|---|---|---|
| | 38. | LMNO is a television production company.<br><br>Nelson Decl., Ex. A, ¶ 26. | Undisputed. |
| | 39. | Eric Schotz is the President and Chief Executive Officer of LMNO.<br><br>Ex. A, ¶ 27. | Undisputed. |
| | 40. | LMNO was the producer of *The Little Couple* television series.<br><br>Nelson Decl., Ex. A, ¶ 3. | Undisputed that LMNO held this title. Disputed to the extent that they contributed wholly and/or fixed the production of |

12

| | | |
|---|---|---|
| | | The Little. Couple.<br><br>Decl. of William Klein. ¶  . |
| 41. | Plaintiff-Intervenors William Klein and Jennifer Arnold are the on-screen stars of *The Little Couple.*<br><br>Nelson Decl., Ex. A, ¶¶ 23-24. | Undisputed. |
| 42. | Candu is a loan-out corporation which provides the services of William Klein and Jennifer Arnold in connection with, *inter alia*, the production of *The Little Couple*.<br><br>Nelson Decl., Ex. A, ¶ 25. | Undisputed. |
| 43. | On or about October 28, 2008, William Klein and Jennifer Arnold, on the one hand, and LMNO, on the other hand, entered into an agreement entitled the "Option Agreement."<br><br>Nelson Decl., Ex. A, ¶ 42; Nelson Decl., Ex. F [Option Agreement]; Nelson Decl., Ex. B [Klein Depo.], 19:25-20:19. | Undisputed. |
| 44. | Under the Option Agreement, LMNO was granted an exclusive option to produce a television series based on the daily lives of William Klein and Jennifer Arnold.<br><br>Nelson Decl., Ex. F, ¶ 1; Nelson Decl., Ex. B, 19:25-20:19. | Undisputed. |
| 45. | The Option Agreement provided that William Klein and Jennifer | Undisputed. |

13

| | | | |
|---|---|---|---|
| | | Arnold would receive an upfront fee for each original episode of *The Little Couple* that was produced.<br><br>Nelson Decl., Ex. A, ¶ 42. | |
| | 46. | The Option Agreement provided that William Klein and Jennifer Arnold would be entitled to "Twenty-Five percent [25%] of One Hundred Percent [100%] of LMNO's share of any contingent compensation received by LMNO from the exploitation of the Property by third parties (e.g. all media including television, DVD's merchandise, domestic and foreign), after LMNO first receives any un-recouped, direct, out of pocket third party customary development, production, and distribution costs."<br><br>Nelson Decl., Ex. A, ¶ 42; Nelson Decl., Ex. F, ¶ 3; Nelson Decl., Ex. B, 19:25-20:19. | Undisputed. |
| | 47. | The Option Agreement provided that "Artist shall receive written accountings [including Network accounting statements] from LMNO along with any contingent compensation payments due within a period of ninety [90] days from LMNO's receipt of any written accountings and contingent compensation payments due from the applicable Network and/or distributor."<br><br>Nelson Decl., Ex. F, ¶ 3; Nelson Decl., | Undisputed. |

| | | Ex. B, 19:25-20:19. | |
|---|---|---|---|
| | 48. | The Option Agreement was amended by (1) an Amendment dated July 20, 2009, (2) a Second Amendment to Option Agreement dated November 1, 2010, and (3) Amendment 3 to Option Agreement dated November 1, 2011 (the "Amended Option Agreement").<br><br>Nelson Decl., Ex. G [Surviving Agreement], Recital A; Nelson Decl., Ex. B, 33:17-34:9. | Undisputed. |
| | 49. | In or around June 2014, LMNO assigned the Amended Option Agreement, in its entirety, to Discovery Communications, LLC.<br><br>Nelson Decl., Ex. G, Recital B; Nelson Decl., Ex. B, 33:17-34:9; Nelson Decl., Ex. A, ¶ 47. | Undisputed. |
| | 50. | In or around June 2014, LMNO and Candu entered into the Surviving Agreement.<br><br>Nelson Decl., Ex. A, ¶ 48; Nelson Decl., Ex. G; Nelson Decl., Ex. B, 33:17-34:9. | Undisputed. |
| | 51. | The Surviving Agreement provided that "Artist shall be entitled to receive 25% of 100% of Producer's share of any contingent compensation received by Producer from the exploitation of the Property by third parties (e.g. all media including television, DVDs, merchandise, publishing, domestic and foreign), after Producer first recoups any un-recouped direct, out of pocket | Disputed to the extent that the Agreement clearly states that Plaintiffs are entitled to 25% of 100% of LMNO's share of direct exploitation by LMNO of the Program, which includes licensing of the Program to Cineflix.<br><br>Klein Decl. ¶ . |

15

| | | | |
|---|---|---|---|
| | | third party customary development, production, and distribution costs."<br><br>Nelson Decl., Ex. A, ¶ 48; Nelson Decl., Ex. G, ¶ 3; Nelson Decl., Ex. B, 33:17-34:9. | |
| | 52. | The Surviving Agreement provided that "Artist shall be entitled to receive reasonably detailed, written accountings (including copies of any and all network and other third party accounting statements received by Producer) from Producer along with any and all contingent compensation payments (including, without limitation, Net Proceeds and Net Merchandise Receipts) due within a period of ninety (90) days from Producer's receipt of any written accountings and contingent compensation payments due from the applicable network and/or distributor."<br><br>Nelson Decl., Ex. A, ¶ 48; Nelson Decl., Ex. G, ¶ 3; Nelson Decl., Ex. B, 33:17-34:9. | Disputed to the extent that the Agreement clearly states that Plaintiffs are entitled to 25% of 100% of LMNO's share of direct exploitation by LMNO of the Program, which includes licensing of the Program to Cineflix.<br><br>Klein Decl. ¶ . |
| | 53. | Plaintiff-Intervenors have alleged that LMNO breached its contractual obligations under the Amended Option Agreement and Surviving Agreement by "underreporting of revenues owed to Plaintiffs as their portion of LMNO's contingent compensation" and "fail[ing] to pay amounts actually owed to Plaintiff as Plaintiffs' portion of LMNO's contingent | Undisputed. |

16

| | | | |
|---|---|---|---|
| | | compensation."<br><br>Nelson Decl., Ex. A, ¶¶ 76-77. | |
| | 54. | Plaintiff-Intervenors' alleged conversion is based solely on the allegation that LMNO and/or Schotz has interfered with money that Plaintiff-Intervenors allegedly should have been paid under the Amended Option Agreement or Surviving Agreement.<br><br>Nelson Decl., Ex. A, ¶ 122-126. | Disputed in part. Plaintiffs also claim that they have an equitable lien, as set forth in their Opposition to the Motion for Summary Judgment. |
| | 55. | Plaintiff-Intervenors have not identified any actual damages that they have suffered as a result of LMNO and Schotz's alleged conversion other than the damages purportedly arising from LMNO's alleged breach of the Amended Option Agreement and Surviving Agreement.<br><br>Nelson Decl., Ex. H, Response to Interrogatories 12-13; Nelson Decl., Ex.<br>I [Plaintiff-Intervenors' Damage Expert Report]. | Disputed. Plaintiffs have alleged that they suffered emotional distress damages as well.<br><br>Klein Decl. ¶   . |

**ISSUE 4: An Order should be entered adjudicating Plaintiff-Intervenors' fraud claim in favor of Eric Schotz because Plaintiff-Intervenors cannot establish the essential element that Eric Schotz made a misrepresentation.**

| | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence |
|---|---|---|
| 56. | Eric Schotz did not make any misrepresentation to Plaintiff-Intervenors.<br><br>Nelson Decl., Ex. H [Plaintiff-Intervenors Interrogatory Responses], Response to Interrogatory No. 1; Nelson Decl., Ex. B, 94:4-14; Nelson Decl., Ex. C [Arnold Depo.], 23:1-24:2, 32:2-7. | Disputed. Schotz made oral misrepresentations to Plaintiffs and sent them falsified financial records that were created at his direction.<br><br>Dayalan Decl. Ex. . (Ikegami Depo.). Klein Decl. ¶ . |
| 57. | LMNO changed their foreign distributor for *The Little Couple* from Endomol to Cineflix.<br><br>Nelson Decl., Ex. B, 40:2-17; Nelson Decl., Ex. J [Horwitz Depo], 456:1-13. | Undisputed. |

**ISSUE 5: An Order should be entered determining that Plaintiff-Intervenors cannot obtain rescission of their option agreement with LMNO because Plaintiff-Intervenors cannot establish a right to rescission, have waived any rescission, and rescission is not an appropriate remedy.**

**PLAINTIFFS' STATEMENT OF GENUINE DISPUTED FACTS IN SUPPORT OF THEIR OPPOSITION TO DEFENDANTS ERIC SHOTZ AND LMNO CABLE GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT**

| | | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence |
|---|---|---|---|
| | 58. | LMNO is a television production company.<br><br>Nelson Decl., Ex. A, ¶ 26. | Undisputed. |
| | 59. | LMNO was the producer of *The Little Couple* television series.<br><br>Nelson Decl., Ex. A, ¶ 3. | Undisputed. |
| | 60. | Plaintiff-Intervenors William Klein and Jennifer Arnold are the on-screen stars of *The Little Couple.*<br><br>Nelson Decl., Ex. A, ¶¶ 23-24. | Undisputed. |
| | 61. | Candu is a loan-out corporation which provides the services of William Klein and Jennifer Arnold in connection with, *inter alia*, the production of *The Little Couple.*<br><br>Nelson Decl., Ex. A, ¶ 25. | Undisputed. |
| | 62. | On or about October 28, 2008, William Klein and Jennifer Arnold, on the one hand, and LMNO, on the other hand, entered into an agreement entitled the "Option Agreement."<br><br>Nelson Decl., Ex. A, ¶ 42; Nelson Decl., Ex. F [Option Agreement]; Nelson Decl., Ex. B [Klein Depo.], 19:25-21:19. | Undisputed. |
| | 63. | The Option Agreement was amended by (1) an Amendment dated July 20, 2009, (2) a Second Amendment to Option Agreement dated November 1, 2010, and (3) | Undisputed. |

19

**PLAINTIFFS' STATEMENT OF GENUINE DISPUTED FACTS IN SUPPORT OF
THEIR OPPOSITION TO DEFENDANTS ERIC SHOTZ AND LMNO CABLE
GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT**

| | | | |
|---|---|---|---|
| | | Amendment 3 to Option Agreement dated November 1, 2011 (the "Amended Option Agreement").<br><br>Nelson Decl., Ex. G [Surviving Agreement], Recital A; Nelson Decl., Ex. B, 33:17-34:9. | |
| | 64. | In or around June 2014, LMNO assigned the Amended Option Agreement, in its entirety, to Discovery Communications, LLC.<br><br>Nelson Decl., Ex. G, Recital B; Nelson Decl., Ex. B, 33:17-34:9; Nelson Decl., Ex. A, ¶ 47. | Undisputed. |
| | 65. | Plaintiff-Intervenors' current relationship with Discovery Communications, LLC continues to be governed by the Option Agreement, as amended.<br><br>Nelson Decl., Ex. K [March 7, 2017 Amendment of Option Agreement]; Nelson Decl., Ex. B, 122:1-126:13. | Disputed to the extent that "as amended" is vague and ambiguous. |
| | 66. | Plaintiff-Intervenors cannot identify any alleged misrepresentation made to them by LMNO prior to November 2010.<br><br>Nelson Decl., Ex. H [Plaintiff-Intervenors Interrogatory Responses], Response to Interrogatory No. 1. | Disputed. The falsified accounting statements provided by LMNO to Plaintiffs related specifically to costs, profits and deficits of the Program dating to its inception, which pre-dates November 2010.<br><br>Klein Decl. . Dayalan Decl (Ikegami depo). |
| | 67. | Plaintiff-Intervenors did not rely on any misrepresentation by | Disputed. Plaintiffs relied on Defendants' misrepresentation |

20

| | | | |
|---|---|---|---|
| | | LMNO when they entered into the Option Agreement.<br><br>Nelson Decl., Ex. H, Response to Interrogatories 2 and 3. | that they would pay contingent compensation owed. Defendants, however, intended from the beginning to never pay any contingent compensation.<br><br>Klein Depo. |
| | 68. | In or around December 2015, Plaintiff-Intervenors obtained information indicating that LMNO may have misstated that amount of money owed to Plaintiff-Intervenors.<br><br>Nelson Decl., Ex. A, ¶ 13. | Disputed to the extent that there is an implication that Plaintiffs had provable facts of fraud committed by Defendants. Plaintiffs did not truly learn of Defendants' fraud until the filing of Discovery's counter-claim and Ikegami's counter-claim in a state court action.<br><br>Klein Decl.¶ . |
| | 69. | After December 2015, Plaintiff-Intervenors continued to work with LMNO and accept payment under the Option Agreement, as amended.<br><br>Nelson Decl., Ex B, 103:24-106:13, 122:1-126:13. | Undisputed. |
| | 70. | On or about April 19, 2017, William Klein, acting as a representative of Candu, executed an agreement with Discovery Communications, LLC entitled "Talent Amendment 1 for Candu Enterprises Inc. F/S/O Jennifer Arnold & Bill Klein for "The Little Couple" (the "April 2017 Amendment").<br><br>Nelson Decl., Ex. K [March 7, 2017 Amendment of Option Agreement]; | Undisputed. |

| | | | |
|---|---|---|---|
| | | Nelson Decl., Ex. B, 122:1-126:13. | |
| | 71. | The April 2017 Amendment is an amendment to the Option Agreement.<br><br>Nelson Decl., Ex. K, p.1, para. 1; Nelson Decl., Ex. F; Nelson Decl., Ex. B, 19:25-21:19, 122:1-126:13. | Undisputed. |
| | 72. | As part of the April 2017 Amendment, Candu "ratified and confirmed" the Option Agreement.<br><br>Nelson Decl., Ex. K, p.3; Nelson Decl., Ex. F; Nelson Decl., Ex. B, 19:25-21:19, 122:1-126:13. | Disputed to the extent that this supposed fact implies that Plaintiffs ratified Defendants' fraud. Plaintiffs signed an agreement with Discovery as stated in No. 70. |

**ISSUE 6: An Order should be entered denying Plaintiff-Intervenors' request for declaratory relief because Plaintiff-Intervenors cannot establish any legal grounds on which they would have any ownership interest in the intellectual property of The Little Couple series.**

22

| | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence |
|---|---|---|
| 73. | LMNO is a television production company.<br><br>Nelson Decl., Ex. A, ¶ 26. | Undisputed. |
| 74. | LMNO was the producer of *The Little Couple* television series.<br><br>Nelson Decl., Ex. A, ¶ 3. | Undisputed. |
| 75. | Plaintiff-Intervenors' William Klein and Jennifer Arnold are the on-screen stars of *The Little Couple.*<br><br>Nelson Decl., Ex. A, ¶¶ 23-24. | Undisputed. |
| 76. | Candu is a loan-out corporation which provides the services of William Klein and Jennifer Arnold in connection with, *inter alia*, the production of *The Little Couple.*<br><br>Nelson Decl., Ex. A, ¶ 25. | Undisputed. |
| 77. | On or about October 28, 2008, William Klein and Jennifer Arnold, on the one hand, and LMNO, on the other hand, entered into an agreement entitled the "Option Agreement."<br><br>Nelson Decl., Ex. A, ¶ 42; Nelson Decl., Ex. F; Nelson Decl., Ex. B, 19:25-20:19. | Undisputed. |
| 78. | Under the Option Agreement, LMNO was granted an exclusive option to produce a television series based on the daily lives of William Klein and Jennifer Arnold | Undisputed. |

23

| | | | |
|---|---|---|---|
| | | Nelson Decl., Ex. F, ¶ 1; Nelson Decl., Ex. B, 19:25-20:19. | |
| | 79. | The Option Agreement provides that "LMNO shall be the sole and exclusive Owner of the Project/Program and all rights with respect thereto . . . , which shall include all rights in and to the material created by Artist, in whole or in part . . . ."<br><br>Nelson Decl., Ex. F, Exhibit A, ¶ 8.; Nelson Decl., Ex. B, 19:25-20:19. | Undisputed. |
| | 80. | When he entered into the Option Agreement, Plaintiff-Intervenor William Klein understood that LMNO would own all rights to *The Little Couple*.<br><br>Nelson Decl., Ex. B, 30:7-32:14. | Undisputed. |
| | 81. | When she entered into the Option Agreement, Plaintiff-Intervenor Jennifer Arnold did not have an understanding regarding who would own the rights to *The Little Couple*.<br><br>Nelson Decl., Ex. C, 19:6-21. | Undisputed. |

**ISSUE 7: An Order should be entered determining that the contingent compensation provisions in the contractual agreements between LMNO and Plaintiff-Intervenors do not entitle Plaintiff-Intervenors to any share of payments that LMNO received from Cineflix in connection with (1) a "Catalogue Guarantee," (2) an "Output Guarantee," and (3) certain "Additional Programme Guarantees."** 24

| | | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiff's Disputed Facts and Supporting Evidence |
|---|---|---|---|
| | 82. | LMNO Cable Group, Inc. ("LMNO") is a television production company.<br><br>Declaration of David W. Nelson ("Nelson Decl."), Ex. A [Plaintiff-Intervenors' First Amended Complaint], ¶ 26. | Undisputed. |
| | 83. | LMNO was the producer of *The Little Couple* television series.<br><br>Nelson Decl., Ex. A, ¶ 3. | Undisputed. |
| | 84. | Plaintiff-Intervenors William Klein and Jennifer Arnold are the on-screen stars of *The Little Couple*.<br><br>Nelson Decl., Ex. A, ¶¶ 23-24. | Undisputed. |
| | 85. | Plaintiff-Intervenor Candu Enterprises, Inc. ("Candu") is a loan-out corporation which provides the services of William Klein and Jennifer Arnold in connection with, *inter alia*, the production of *The Little Couple*.<br><br>Nelson Decl., Ex. A, ¶ 25. | Undisputed. |
| | 86. | On or about October 28, 2008, William Klein and Jennifer Arnold, on the one hand, and LMNO, on the other hand, entered into an agreement entitled the "Option Agreement."<br><br>Nelson Decl., Ex. A, ¶ 42; Nelson Decl., Ex. F [Option Agreement]. | Undisputed. |

25

| | | | |
|---|---|---|---|
| 1 | | Nelson Decl., Ex. B [Klein Depo.], 19:25-20:19. | |
| 2–7 | 87. | Under the Option Agreement, LMNO was granted an exclusive option to produce a television series based on the daily lives of William Klein and Jennifer Arnold.<br><br>Nelson Decl., Ex. F, ¶ 1; Nelson Decl., Ex. B, 19:25-20:19. | Undisputed. |
| 8–21 | 88. | The Option Agreement provided that William Klein and Jennifer Arnold would be entitled to "Twenty-Five percent [25%] of One Hundred Percent [100%] of LMNO's share of any contingent compensation received by LMNO from the exploitation of the Property by third parties (e.g. all media including television, DVD's merchandise, domestic and foreign), after LMNO first receives any un-recouped, direct, out of pocket third party customary development, production, and distribution costs."<br><br>Nelson Decl., Ex. A, ¶ 42; Nelson Decl., Ex. F, ¶ 3; Nelson Decl., Ex. B, 19:25-20:19. | Undisputed. |
| 22–28 | 89. | The Option Agreement was amended by (1) an Amendment dated July 20, 2009, (2) a Second Amendment to Option Agreement dated November 1, 2010, and (3) Amendment 3 to Option Agreement dated November 1, 2011 (the "Amended Option Agreement"). | Undisputed. |

26

**PLAINTIFFS' STATEMENT OF GENUINE DISPUTED FACTS IN SUPPORT OF THEIR OPPOSITION TO DEFENDANTS ERIC SHOTZ AND LMNO CABLE GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT**

| | | | |
|---|---|---|---|
| | | Nelson Decl., Ex. G [Surviving Agreement], Recital A; Nelson Decl., Ex. B, 33:17-34:9. | |
| | 90. | In or around June 2014, LMNO assigned the Amended Option Agreement, in its entirety, to Discovery Communications, LLC.<br><br>Nelson Decl., Ex. G, Recital B; Nelson Decl., Ex. B, 33:17-34:9; Nelson Decl., Ex. A, ¶ 47. | Undisputed. |
| | 91. | In or around June 2014, LMNO and Candu entered into a "surviving" agreement (the "Surviving Agreement").<br><br>Nelson Decl., Ex. A, ¶ 48; Nelson Decl., Ex. G; Nelson Decl., Ex. B, 33:17-34:9. | Undisputed. |
| | 92. | The Surviving Agreement provided that "Artist shall be entitled to receive 25% of 100% of Producer's share of any contingent compensation received by Producer from the exploitation of the Property by third parties (e.g. all media including television, DVDs, merchandise, publishing, domestic and foreign), after Producer first recoups any un-recouped direct, out of pocket third party customary development, production, and distribution costs."<br><br>Nelson Decl., Ex. A, ¶ 48; Nelson Decl., Ex. G, ¶ 3; Nelson Decl., Ex. B, 33:17-34:9. | Disputed to the extent that the Agreement clearly states that Plaintiffs are entitled to 25% of 100% of LMNO's share of direct exploitation by LMNO of the Program, which includes licensing of the Program to Cineflix.<br><br>Klein Decl. ¶  . |
| | 93. | Plaintiff-Intervenors have alleged that LMNO breached its contractual obligations under the | Undisputed. |

| | | | |
|---|---|---|---|
| | | Amended Option Agreement and Surviving Agreement by "underreporting of revenues owed to Plaintiffs as their portion of LMNO's contingent compensation" and "fail[ing] to pay amounts actually owed to Plaintiff as Plaintiffs' portion of LMNO's contingent compensation." <br><br> Nelson Decl., Ex. A, ¶¶ 76-77. | |
| | 94. | The term "contingent" is defined as being "dependent on or conditioned by something else. <br><br> Nelson Decl., Ex. M [Merriam Webster Definition of "Contingent"). | Undisputed. |
| | 95. | The term "contingent" cannot be understood to include an event or occurrence that is guaranteed to happen. <br><br> Nelson Decl., Ex. M ; Nelson Decl., Ex. E [Armstrong Depo.], 24:5-22. | Disputed to the extent that this supposition is not undisputed material fact appropriate for a motion for summary judgment. |
| | 96. | On or about October 2012, LMNO entered into a distribution agreement with Cineflix International Media Limited (the "Cineflix Agreement"). <br><br> Nelson Decl., Ex. L; Nelson Decl., Ex. D [Cineflix Depo.], 10:9-19, 12:9-11. | Undisputed. |
| | 97. | Under the Cineflix agreement, LMNO granted Cineflix "the exclusive [foreign] distribution rights to all available programmes produced and developed by it" over an agreed term – not just to *The Little Couple*. | Disputed to the extent that the Agreement clearly states that Plaintiffs are entitled to 25% of 100% of LMNO's share of direct exploitation by LMNO of the Program, which includes licensing of the Program to |

28

| | | | |
|---|---|---|---|
| 1 | | Nelson Decl., Ex. L, p.1; Nelson Decl., Ex. D [Cineflix Depo.], 10:9-19, 12:9-11. | Cineflix.<br><br>Klein Decl. ¶  . |
| 98. | | The Cineflix agreement provided for LMNO to received two type of payments: guaranteed payments; and contingent payments based on the sales for the shows.<br><br>Nelson Decl., Ex. L; Nelson Decl., Ex. D, 10:9-19, 12:9-11, 61:17-22. | Disputed to the extent that the Agreement clearly states that Plaintiffs are entitled to 25% of 100% of LMNO's share of direct exploitation by LMNO of the Program, which includes licensing of the Program to Cineflix.<br><br>Klein Decl. ¶  . |
| 99. | | The Cineflix Agreement provided that LMNO was entitled to payment of a "Catalogue Guarantee," which was paid as compensation for LMNO's license to Cineflix of its catalogue of programs.<br><br>Nelson Decl., Ex. L, § 7.2-7.3; Nelson Decl., Ex. D, 10:9-19, 12:9-11, 61:3-62:22. | Disputed to the extent that the Agreement clearly states that Plaintiffs are entitled to 25% of 100% of LMNO's share of direct exploitation by LMNO of the Program, which includes licensing of the Program to Cineflix.<br><br>Klein Decl. ¶  . |
| 100 | | No identifiable portion of the Catalogue Guarantee was paid with respect to *The Little Couple*.<br><br>Nelson Decl., Ex. D, 61:23-62:22. | Disputed to the extent that the Agreement clearly states that Plaintiffs are entitled to 25% of 100% of LMNO's share of direct exploitation by LMNO of the Program, which includes licensing of the Program to Cineflix.<br><br>Klein Decl. ¶  . |
| 101 | | LMNO's receipt of the Catalogue Guarantee was not contingent.<br><br>Nelson Decl., Ex. D, 62:11-13. | Disputed to the extent that the Agreement clearly states that Plaintiffs are entitled to 25% of 100% of LMNO's share of direct exploitation by LMNO of |

29

**PLAINTIFFS' STATEMENT OF GENUINE DISPUTED FACTS IN SUPPORT OF THEIR OPPOSITION TO DEFENDANTS ERIC SHOTZ AND LMNO CABLE GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT**

| | | | |
|---|---|---|---|
| | | | the Program, which includes licensing of the Program to Cineflix.<br><br>Klein Decl. ¶  . |
| | 102 | The Cineflix Agreement provided that LMNO was entitled to payment of an "Output Guarantee," which was paid as compensation for LMNO's license to Cineflix of future programs.<br><br>Nelson Decl., Ex. L, § 7.4-7.5; Nelson Decl., Ex. D, 10:9-19, 12:9-11, 62:23-63:21. | Disputed to the extent that the Agreement clearly states that Plaintiffs are entitled to 25% of 100% of LMNO's share of direct exploitation by LMNO of the Program, which includes licensing of the Program to Cineflix.<br><br>Klein Decl. ¶  . |
| | 103 | The Output Guarantee was not paid as compensation for any episodes of *The Little Couple*.<br><br>Nelson Decl., Ex. L, § 7.4-7.5; Nelson Decl., Ex. D, 10:9-19, 12:9-11, 62:23-63:21. | Disputed to the extent that the Agreement clearly states that Plaintiffs are entitled to 25% of 100% of LMNO's share of direct exploitation by LMNO of the Program, which includes licensing of the Program to Cineflix.<br><br>Klein Decl. ¶  . |
| | 104 | LMNO's receipt of the Output Guarantee was not contingent.<br><br>Nelson Decl., Ex. L, § 7.4-7.5; Nelson Decl., Ex. D, 10:9-19, 12:9-11. | Disputed to the extent that the Agreement clearly states that Plaintiffs are entitled to 25% of 100% of LMNO's share of direct exploitation by LMNO of the Program, which includes licensing of the Program to Cineflix.<br><br>Klein Decl. ¶  . |
| | 105 | The Cineflix Agreement provided that LMNO was entitled to payment of a "Additional Programme Guarantee," which | Disputed to the extent that the Agreement clearly states that Plaintiffs are entitled to 25% of 100% of LMNO's share of |

30

**PLAINTIFFS' STATEMENT OF GENUINE DISPUTED FACTS IN SUPPORT OF THEIR OPPOSITION TO DEFENDANTS ERIC SHOTZ AND LMNO CABLE GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT**

| | | | |
|---|---|---|---|
| | | was paid as compensation for LMNO's license to Cineflix of additional programs that would be created by LMNO.<br><br>Nelson Decl., Ex. L, § 7.6; Nelson Decl., Ex. D, 10:9-19, 12:9-11. | direct exploitation by LMNO of the Program, which includes licensing of the Program to Cineflix.<br><br>Klein Decl. ¶ . |
| | 106 | LMNO's receipt of the Additional Programme Guarantee was not contingent.<br><br>Nelson Decl., Ex. L, § 7.6; Nelson Decl., Ex. D, 10:9-19, 12:9-11. | Disputed to the extent that the Agreement clearly states that Plaintiffs are entitled to 25% of 100% of LMNO's share of direct exploitation by LMNO of the Program, which includes licensing of the Program to Cineflix.<br><br>Klein Decl. ¶ . |

DATED:  February 26, 2018              JOHNSON & JOHNSON LLP

                              By    /s/ Neville L. Johnson
                                    Neville L. Johnson
                                    Arun Dayalan
                                    *Attorneys for Plaintiff-Intervenors*
                                    William Klien, Jennifer Arnold, and
                                    Candu Enterprises, Inc.

**PLAINTIFFS' STATEMENT OF GENUINE DISPUTED FACTS IN SUPPORT OF THEIR OPPOSITION TO DEFENDANTS ERIC SHOTZ AND LMNO CABLE GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT**